[Civ. No. 24136. Second Dist., Div. Three. June 20, 1960.]

ETHEL RUTH STROHM, Respondent, v. HAROLD A. STROHM et al., Appellants.

Vincent Scott for Appellants.

P. E. Durkee for Respondent.

VALLÉE, J.—Appeal by defendant husband from an interlocutory judgment of divorce granted to plaintiff. Defendant asserts the court erred: (1) in awarding support to plaintiff in that the evidence failed to show her needs and his ability to pay; (2) in finding certain corporate stock standing in his name to be community property and awarding half of it to plaintiff. He also claims the judgment is uncertain in one respect.

The parties were married on September 23, 1953. They purchased a home subject to an encumbrance in March 1954, taking title as joint tenants. A daughter was born on July 30, 1955. They separated on July 1, 1957, and plaintiff filed suit on July 9, 1957, alleging extreme cruelty.

The interlocutory judgment entered March 30, 1959, awarded the divorce and custody of the child to plaintiff. It also awarded to her a 1954 automobile, household furniture and furnishings, and half of the stock of Ideal Wire Works, Inc., standing in the name of defendant, but reserved voting privileges to defendant for all purposes except liquidation or sale. The court found the equity in the home to be joint tenancy property.

The judgment ordered defendant to pay: $100 a month for support of the child; $200 a month alimony; $41.40 a month as half of the monthly payment due on the encumbrance on the home; all necessary insurance on the home; public utilities used by plaintiff and the minor child; premiums on a $5,000 life insurance policy naming the minor child as beneficiary, subject to her predeceasing him. The judgment also ordered defendant to pay on account of arrearages then outstanding for the support of plaintiff and the minor child the sum of $500 at the rate of $25 or more a month and $300 additional attorney fees at the rate of $25 a month.

It is asserted the court abused its discretion in awarding $200 a month alimony to plaintiff. Defendant concedes that in theory plaintiff is entitled to support; he contends, however, that evidence of her needs must be presented in mathematical terms. Plaintiff and the minor child resided in the home of the parties. She had the care of the child. She had not worked since the marriage. For about two years prior to the marriage she had worked a daily three-hour shift as a waitress for $1.00 an hour and earned about $27 a week including tips. She had been under a doctor's care for about three years for treatment of chronic bronchitis and nerves. She suffered from shingles, facial eruptions, and crying spells.

██ "The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective

matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381].)'" (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249].)

Defendant had been ordered to pay to plaintiff $200 a month pendente lite. The court noted from the file that defendant had been found guilty of contempt on January 12, 1959 for wilful failure to comply with the pendente lite order for the support of plaintiff and the minor child. He received a suspended sentence on condition he pay the arrearages, which he paid. At the time of trial he was delinquent in making payment of the amounts which had since accrued.

As the court stated in *Wilson* v. *Wilson,* 104 Cal.App. 2d 167 [231 P.2d 128] (p. 173): "In determining a basis for alimony, there does not have to be the particularity as to each item which would be required were a creditor suing on each item. There need be only a showing upon which the court can determine approximately what the needs of the wife are."

There was sufficient evidence from which the court could determine approximately what plaintiff's needs were. Taking into consideration the observations of plaintiff made by the court and the evidence she was unskilled in any remunerative occupation, that she at no time was employed or had income during the marriage, that her time and effort would be given to the care of a child of preschool age, that she would be required to make payments on the home, and that she was under a doctor's care, the court was sufficiently informed of her circumstances from which he could determine approximately the amount required for her needs. The matters on which the amount of the award was predicated are nontechnical in nature. Determining the amount comes within the rule that the trier of fact may fix a reasonable sum where the matters are nontechnical in nature and of common knowledge. (See *Lundberg* v. *Katz,* 44 Cal.App.2d 38, 46 [111 P.2d 917]; *Merrill* v. *Dustman,* 97 Cal.App.2d 473, 477 [217 P.2d 998]; *Stiles* v. *Nunes,* 98 Cal.App.2d 739, 740 [220 P.2d 792].)

Defendant says the evidence does not support the finding that he has the ability to pay.

Defendant had been engaged in the business of manufacturing wire products for many years. About 1949 or 1950 he

merged his business with Ideal Wire Works, Inc., which appears to have been controlled by his brother, Wilbur Strohm. Each of the brothers received 49 per cent of the stock of the corporation. Wilbur Strohm was president and managed the office. Defendant was vice-president and served as production superintendent and assisted with sales. He testified he had no income from any other source.

Prior to February 5, 1959, defendant had been paid an amount designated on the corporate books as "salary" at the rate of $200 a week; which, after deductions for taxes and social security, amounted to $153 a week for the first eighteen weeks of a year, and $160 a week for the balance of the year. On February 5, 1959, this amount had been reduced to $150 gross, or about $116 net a week. The accountant for the firm testified that for years, although "salary" checks were issued to the brothers at the rate of $200 gross weekly, the total drawing of each as an officer of the corporation amounted to $18,000 gross annually, or about $14,000 net. It was their practice to draw checks on the corporation in making payments of their personal obligations, the amounts of which were posted as "advances to officers" on the corporate books. From time to time they would deposit some of their "salary" checks to be credited against these "advances to officers." At the end of each fiscal year, on February 28, the amounts issued to them as "salary" and the amounts paid out in their behalf as "advances" were totalled and deducted from the $18,000 allotted to each. Any balance was withdrawn and immediately redeposited with the corporation as a "credit."

As of June 1957 the books of the corporation indicated defendant had a credit of $9,299.65. During the next year and a half, which is the approximate period during which the divorce action was pending, the books showed he received as "salary" $7,784 for one year and $3,844 for six months, a total of $11,628. He drew as "advances" about $13,491.97, which exhausted his "credit" of $9,299.65 on the books of the corporation and set up the sum of $4,192.32 as owing by him to the corporation as of January 31, 1959. Defendant testified: "Q. For one year your auditor said you drew $7,784 and for six months you drew $3,844. You also withdrew from the company your credit balance of $10,000 and borrowed an additional $5,000; is that correct? A. Yes, that's right. Q. Which totals $26,076 you have had from the company since June 30, 1957; is that right? A. I imagine that's right."

Defendant testified he had no personal bank account, that

he used the account of the corporation for drawing checks; he owed $1,200 for medical care, $1,140 borrowed on insurance policies, $430 for federal taxes, an undetermined amount for state taxes, about $4,500 to the corporation, and was $600 in arrears on pendente lite alimony payments to plaintiff. He made no accounting of how the money he had received had been spent. When questioned regarding checks he had drawn on the corporation, he admitted he lost over $2,000 in gambling at Las Vegas, and had made a trip to Hawaii in the company of another woman. He admitted he had paid for two tickets, but testified she had paid him for hers and that she paid her own expenses. There was evidence that he drank to excess and had taken pleasure trips to Rosarita Beach and San Francisco.

The corporate books had not been closed for the fiscal year ending February 28, 1959, at the time of trial in March 1959. Defendant denied that he had a present drawing account. The accountant for the corporation testified the corporation was in bad shape, sales had dropped, and it was presently necessary to factor its accounts. There was evidence the corporation had purchased a new building in 1958 at a cost of $60,000 which is encumbered for $47,142.11, and added equipment at a cost of $20,000 which is subject to a chattel mortgage for $10,374.48. The accountant personally held a third trust deed on the real property for $10,500 and the chattel mortgage on the equipment. The corporate books indicated the net worth of the corporation was $50,358.46. An affidavit of defendant, filed in an earlier case, was received in evidence and indicated he valued *his* stock in the corporation at $15,000 on June 21, 1956.

Defendant specifically enumerated his monthly expenses. They totalled in excess of $377. His physician testified that he had a chronic condition which required intravenous and hypodermic medication almost daily. He stated defendant owed him over $1,000 for medical bills. He had loaned $4,400 to the Strohm brothers and had received a note for $5,000 signed by both of them. He admitted defendant was in good health or he would not have made the loan to him.

Defendant claims his testimony that he had no drawing account was not controverted and that his testimony that his sole source of income was a net weekly salary of $116.45, or an average of about $506 a month, is conclusive. He contends the court could not equitably order him to pay out in excess

of $391.40 a month, leaving him with less than $114.60 for his monthly expenses.

Defendant's contention that his sole source of income is his "salary" is based on his version of the evidence. The precise condition of his financial status was left in doubt because of the inconsistency between the limited amount of present income shown by his testimony and the generous sums which he obtained and apparently dissipated during the pendency of the divorce action and in previous years. The court was not required to rely naively on the testimony of defendant or on the designation of the sums received as "loans" on the corporate books which were in his joint control to determine his means or his capacity to acquire the means to pay the amounts ordered. Nor was the court required to rely on the testimony of defendant's witnesses where it was shown they were personally interested in the financial affairs of the corporation. The financial activities of defendant during the pendency of the action were pertinent and relevant to the issue of his ability to pay.

The record presents a picture of a man who has the means to meet his marital obligations but not the inclination. It indicates by his own admissions that he received from the business over which he had joint control the sum of approximately $26,000, variously referred to as "salary," "drawings," and "credit," during the year and a half that the divorce action was pending. The record further indicates that during the same period he wilfully refused to meet his family obligations except under the coercion of contempt proceedings. He was evasive in answering questions put to him regarding his financial affairs. On cross-examination he admitted he had drawn checks in payment of gambling debts and pleasure trips. He failed to account for the major portion of those funds and yet testified that he had accumulated about $8,000 of personal debts. Whether he would continue to derive income comparable to that derived in the past from the corporate business was a question of fact to be determined on conflicting evidence. There was evidence that the corporation was losing money; there was also evidence that it had recently purchased a new building and new equipment.

The court could properly draw the unfavorable inference that defendant's joint control of the corporation enabled him to reduce his "salary" and suspend his "drawing" account for the express purpose of avoiding his obligations in this action. At the time of trial he retained the power to draw

checks on the corporation in payment of his personal obligations, although he stated he had no bank account. Whether the money so withdrawn should be deemed income to him or a loan to him by the corporation was for the determination of the court. It reasonably concluded he had a source of income with which to pay the sums awarded. There was no abuse of discretion in the award of support to plaintiff.

It is next contended the court exceeded its jurisdiction in awarding half of the corporate stock to plaintiff. Defendant claims the stock is separate property; the court found it was community property. It is not questioned that defendant acquired the stock prior to the marriage. He obtained it in 1949 or 1950; the parties were married in 1953. All property owned by the husband before marriage, with the rents, issues, and profits thereof, is his separate property. (Civ. Code, § 163.)

It is well settled that a husband and wife may agree with respect to the character of the property which they hold and that they can transmute their property from one status to another by an agreement which ordinarily need not be executed with any particular formality. (*Estate of Watkins,* 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1].) There was no evidence to show that the parties made any agreement in respect to the corporate stock; it is, at least in part, separate property. The questions whether any part of the increase in the intrinsic value of the stock, and whether any part of the profits derived from the stock, became community property were not determined. There is also the undetermined question of whether defendant transferred any community funds to the corporation without consideration and without consent of plaintiff.

In the absence of some special circumstances, an increase in the intrinsic value of separate property constitutes separate property, and this rule is applicable to corporate stock. (*Van Camp* v. *Van Camp*, 53 Cal.App. 17, 28 [199 P. 885].) Similarly, profits derived from investment of separate capital constitutes separate property. (Civ. Code, § 163.) "The husband has the management and control of the community personal property . . . provided, however, that he can not make a gift of such community personal property, or dispose of the same without a valuable consideration, . . . without the written consent of the wife." (Civ. Code, § 172.) Thus, the husband cannot enrich his own separate estate by

the use of community funds. (*Provost* v. *Provost,* 102 Cal. App. 775, 780-783 [283 P. 842].)

 The time, efforts, and skill of the husband are assets of the community and when they are used for the enrichment of the separate property of the husband, the community must be compensated. Where the husband expends time, effort, and skill in the affairs of a corporation in which he holds corporate stock as his separate property, there arises the question of apportionment of the resulting benefits reflected in any increase in the value of the stock and in the profits earned by the corporation. If there is evidence of enrichment of separate property, the probable contributions of the community and of the capital investment of the husband must be determined from all the circumstances of the case. This requires findings of fact. As stated in *Todd* v. *McColgan,* 89 Cal.App.2d 509 [201 P.2d 414] (p. 513): "From an examination of the cases it is apparent that the courts of this state have enunciated no hard and fast rule uniformly applicable to the type of case presented herein." A reasonable apportionment in view of the probable contribution of the husband's services and of his separate capital is sufficient. In *Van Camp* v. *Van Camp, supra,* 53 Cal.App. 17, it was held that if it is established by proof that the husband was paid a fair compensation for his services by the corporation, that compensation is considered adequate reimbursement to the community.

 Before an apportionment is necessary, it is elementary there must be a finding that there was an increase in the value of the separate property and the amount thereof. There was no finding in this respect. There was no finding of the exact amount defendant was paid for his services, other than the implied finding that his present income exceeds the weekly "salary" paid to him. There is no testimony in the record as to whether the amount which would thus represent compensation for his services was fair compensation for the services he rendered as production superintendent and in assisting with sales. There was no finding on the issue raised by plaintiff as to whether funds which should have been classified as community property were transferred to the corporation without consideration and without the consent of the wife. The evidence is insufficient to sustain the finding that the stock is community property. A retrial of that issue is necessary.

 Defendant also contends the judgment is uncertain in part. The questioned part reads: "Defendant is hereby

ordered to pay to Plaintiff the sum of $41.40 per month as and for one-half of the payment on the encumbrance of the real property known as 3408 Lowell Avenue, Los Angeles, California, which is found to be the joint tenancy property of the parties.''

Defendant asserts the judgment is susceptible to the interpretation that he is obligated to pay plaintiff not only $200 a month as alimony but also the additional sum of $41.40 for her half of the installments payable on the encumbrance on the house, and that he would still be liable for the other half. No point is made with respect to the propriety of this part of the judgment if it requires defendant to pay only half of the installments on the encumbrance.

''The same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing. (*Verdier* v. *Verdier*, 121 Cal.App.2d 190, 193 [263 P.2d 57].) The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect (*Downs* v. *Kroeger*, 200 Cal. 743, 749 [254 P. 1101]), and where uncertainty is thereby made plain the defect does not necessitate a reversal. (*Vasiljevich* v. *Radanovich*, 138 Cal.App. 97, 100 [31 P.2d 802].)'' (*Los Angeles Local etc. Board* v. *Stan's Drive-Ins, Inc.*, 136 Cal.App.2d 89, 94 [288 P.2d 286].) And we may consider the opinion of the trial judge for the purpose of understanding and interpreting the judgment. (*Trans-Oceanic Oil Corp.* v. *Santa Barbara*, 85 Cal.App.2d 776, 790 [194 P.2d 148].) In stating his opinion the trial judge said: ''Now, about this house which is $82.49 a month. Since the property is joint tenancy property, each will have to pay one-half thereof.'' We therefore construe the judgment as ordering defendant to pay only his half of the installments on the encumbrance.

The part of the judgment which decrees that half of the stock in Ideal Wire Works, Inc., a corporation, standing in the name of defendant, Harold A. Strohm, is awarded to plaintiff as her sole and separate property is reversed; in all other respects the judgment is affirmed. Plaintiff shall recover her costs on appeal.

Shinn, P. J., and Ford, J., concurred.