[Civ. No. 26640.   Second Dist., Div. One.   Apr. 2, 1963.]

VERNON STOUFFER COTTOM, Plaintiff and Appellant, v. LILLIAN BENNETT, as Executrix, etc., Defendant and Respondent.

Kates & Kates and Gerald B. Tannen for Plaintiff and Appellant.

Henry P. Starr and Malvina Goodstein for Defendant and Respondent.

FOURT, J.—This is an appeal from a judgment in a declaratory relief and quiet title action wherein the plaintiff and appellant husband contended that his former wife had violated

the terms and conditions of an understanding and the terms of an interlocutory divorce decree with reference to certain real property allegedly held by the parties as joint tenants.

A résumé of some of the facts is as follows: the plaintiff herein married Jennie Elizabeth Cottom March 30, 1946. After the marriage they acquired the real property in question, which apparently was occupied by them as a home until the divorce proceedings were instituted. Title was taken by them as joint tenants. There was a separation and the husband filed a divorce action against his wife August 4, 1959. The house and lot in question were not set forth in the husband's complaint as community property. The wife filed an answer and a cross-complaint on October 6, 1959, in both of which she alleged that the house and lot were held in record title as joint tenancy but were in fact the community property of the husband and wife.

In an affidavit in the wife's proceedings for an order to show cause, signed on October 1, 1959, and filed October 7, 1959, she set forth, among other things, that she had "recently sustained surgery for total hysterectomy and colostomy (carcinoma);" that she formerly had been employed in the Los Angeles school system but at the date of signing the affidavit was, and would continue to be, unemployed because of her physical condition and a need for the care of the children of the parties, namely Mary, born in 1947, and Ronald, born in 1948; further, that while she was hospitalized the husband had told her that he wanted a divorce, that he did not want her to come back home, that she was not to return and that he would "pack her bags and send them wherever she indicated," that she was "no longer to have any rights in her home or any rights to her children," that he would go to jail before he would pay anything for her support; further that he had told the wife's family "that he wanted to get rid of her, that he wanted the children and the home for himself, and that he did not intend to take care of defendant in any way." It is also set forth in the affidavit that the house and lot of the parties were reasonably worth $12,000, with a $5,000 encumbrance against them. No counteraffidavit was filed by the husband.

A hearing was held on the order to show cause. An investigation was made by a representative of the court. The investigator's report showed that the husband complained to the investigator that after the wife got home from the hospital she never "caught up with the ironing," that he had taken

"a woman friend to the beach for a few hours" while she was in the hospital. At the conclusion of the hearing on the order to show cause the husband was ordered by the court to make the payments on the house, to pay the wife certain sums for necessary food for the family; the wife and children were to occupy the house, the husband to have a bedroom therein, and each was directed not to harass the other; custody of the children was to be with the wife, and the husband was ordered to pay to the wife before Christmas a stated sum for the "purpose of the wife getting necessary clothing and a Christmas gift for each child."

The record discloses that the wife was operated upon January 13, 1958. A doctor's report with reference thereto sets forth the following:

"This necessitated the following intensive surgical procedure:

"1. Removal of the entire sigmoid colon, rectum and anus, (with creation of a colostomy).

"2. Total hysterectomy.

"3. Removal of left ovary and tube.

"4. Removal portion of the left vaginal wall.

"Following this she was treated by Cobalt radiation, which caused diarrhea, anoemia, and general weakness; all this, along with the emotional adjustment to the colostomy, caused a marked depression, nutritional problem, and finally, with the addition of worry about 'another woman', she became emotionally very disturbed and I was able, (because of her military service), to get her admitted to the V.A. Hospital at Sepulveda.

"She made good progress there, despite being served with divorce papers while under treatment."

She was again hospitalized from June 29, 1959, to September 28, 1959. As above indicated the husband served her with the divorce papers while she was in the hospital and under treatment.

On the day of the trial of the divorce action, February 2, 1960, there apparently were talks of settlement between the attorneys for the respective parties with the judge, in his chambers, at which time apparently there was some discussion with reference to the issues between the parties. Shortly thereafter, in open court, a statement of some sort was made by counsel for the husband and seemingly the case proceeded to trial on the wife's cross-complaint, for after brief testimony

in behalf of the wife's case an interlocutory decree of divorce was granted the wife on her cross-complaint and the husband's divorce complaint was dismissed. Findings of fact and conclusions of law were specifically waived in open court. The judge stated the terms of the judgment in open court on February 2, 1960. A court reporter was present and took notes of what the judge said and later transcribed such notes and the same are now in the record. A minute entry dated February 2, 1960, was made and entered which reads in part as follows:

"The real property located at 8437 Mammoth [sic] Ave., Panorama City, together with furniture and furnishings therein, are to be retained by the parties; the cross-complainant and two children shall have exclusive right to occupancy until cross-complainant marries or dies or until both children die or become emancipated; and at such time the said real property and furnishings therein are to be sold and proceeds therefrom divided equally between the parties."

". . . . . . . . . . . . . . .

"Cross-defendant is ordered to pay to cross-complainant for the support, maintenance and education of said two minor children the sum of $15.00 per week for each child payable one-half on the 10th day and one-half on the 25th day of each and every month beginning February 10, 1960 and continuing until such child shall die, reach majority or until further order of Court."

Counsel for the husband was directed to prepare the interlocutory decree and apparently did so. Counsel for the cross-complainant wife was to "approve as to form" the judgment to be so prepared by counsel for the husband. On February 29, 1960, the decree was entered and provided in part as follows:

"The real property located at 8437 Mammoth Ave., Panorama City, title to which is presently in the name of cross-complainant and cross-defendant as Joint Tenants, shall be retained by them *in joint tenancy.* Cross-complainant and the minor children of the parties shall have the exclusive right of possession of said real property until cross-complainant marries, dies, or both children die or become emancipated, whichever shall first occur, or until further order of this Court; upon the cross-complainant's remarriage, or the death or emancipation of both children, or further order of Court, the said property shall be sold and the proceeds divided equally between the parties hereto. (Italics added.)

"  .  .  .  .  .  .  .  .  .  . .  .  .  .  .

"Cross-defendant is further ordered to pay to cross-complainant as and for child support the sum of $15.00 per child, a total of $30.00 on the 10th and 25th of each and every month commencing February 10, 1960, and continuing until such child dies, marries, or until further order of Court. From the monies paid by cross-defendant to cross-complainant, cross-complainant shall pay all payments upon the real property at 8437 Mammoth Avenue, Panorama City, including interest and principal on existing encumbrances, and taxes and insurance."

It is to be noted that there is considerable variance between the wording of the judge's order as made from the bench (court's minute order) and the wording of the interlocutory decree of divorce as prepared by the attorney for the husband and signed by the judge. The decree as prepared, and signed by the judge, set forth that it was "approved as to contents and form" and carried the signature of the attorney for the wife.

The wife changed attorneys in April 1960 and her present counsel was substituted into the case. During the early part of June 1960 the wife's new attorney, at the request of her client, prepared certain deeds, one of which was from the wife to her brother, wherein she granted to him her right, title and interest in and to the house and lot. That deed was executed and delivered to the brother, who, with the wife's attorney, was at the bedside of Jennie Cottom. The brother thereupon executed a deed of the same property back to Jennie Cottom. The deeds were then recorded in the order in which they were executed and delivered.

The wife afterward made a will in which she left her interest in the house and lot to the two children of the marriage.

On July 13, 1960, the wife made a motion to correct the interlocutory decree with reference to child support payments (which was granted and provided for an order in compliance with the court's original order of February 2, 1960) and with reference to striking the words "in joint tenancy" from the decree (which was not granted).

The court reporter's transcript with respect to the order of the judge as made from the bench with reference to the custody of the children is practically identical with the wording in the minute entry. The reporter's transcript, and the wording in the minute entry, with reference to the disposition of the real property and the amounts and times of payment

for the support of the children, are identical. Nowhere does it appear in the record in this case why the interlocutory decree of divorce was prepared with the wording as used and set forth therein as distinguished from what the court ordered from the bench and as reflected by the minute entry and the court reporter's transcript of the proceedings.

Thereafter the wife apparently became desperately sick and was hospitalized. The court then modified the interlocutory decree to provide in effect that the husband would have custody of the parties' two children and the exclusive right of possession of the house and lot so long as the wife was absent therefrom because of her illness.

The wife died on October 27, 1960. Lillian Bennett (an aunt), the respondent herein, was appointed the executrix of the will of the deceased and letters testamentary were issued.

The husband brought the present action on March 14, 1961, for declaratory relief and to quiet title to the real property alleging, among other things, that he and his wife had orally agreed that neither of them would transfer their interest in said property and that upon the death of either party the survivor of them would thereafter become the sole owner of the entire fee interest; that the attempt by the wife to terminate the joint tenancy was in violation of her agreement and in violation of the interlocutory decree of divorce, and was therefore null and void. The defendant respondent answered in effect that at the time of the death of Jennie Cottom she owned an undivided one-half interest in the house and lot as a tenant in common, and that such interest became an asset of her estate and became subject to probate administration (and ultimate distribution to the two children of the parties to the marriage). There was further an affirmative defense that the action was barred by the provisions of sections 1971, Code of Civil Procedure, and 1091, Civil Code.

At the trial the plaintiff had his attorney sworn as a witness. He made an offer to prove as a witness that there was a conference in the chambers of the divorce trial judge (before the taking of any evidence) between the respective attorneys of the parties; that the discussions were with reference to the status, disposition and claims of each of the parties to the real property in question.

There was a further offer to prove the various statements. An objection to such testimony was made and sustained. Plaintiff thereupon rested his case.

The executrix placed the present attorney of the wife on

the witness stand and established that she, the attorney, had prepared the deeds at the instance and request of her client, that she had taken the deeds to Jennie Cottom and had witnessed their execution and acknowledged the signatures, that the deed executed by Jennie Cottom was delivered to Johnson (the grantee-brother of Jennie); that Johnson had then executed a deed to Jennie and delivered the same to her; that the deeds were then recorded and returned to Jennie. The divorce file was introduced into evidence and became an exhibit in the case.

The appellant now asserts that the interlocutory decree was binding upon the wife and the executrix of her will, and that the property must be considered as being joint tenancy property as of the time of the death of Jennie Cottom; that there was insufficient evidence to support the trial judge's determination; that it was error to exclude evidence of the agreement of the husband and wife with reference to the property.

Findings of fact and conclusions of law were made in which the trial judge in effect determined that once the divorce trial judge adjudged the property to be joint tenancy rather than community property the court lost the power to restrict the alienation of the property; that the statute of frauds under the circumstances precluded an inquiry into the alleged oral agreement which may have purported to restrict the right of the parties to transfer their interest in the property; that the deeds from and to Jennie were properly and duly executed, delivered and recorded; that at the time of her death Jennie held an undivided one-half interest in the house and lot as a tenant in common and such interest was subject to testamentary disposition.

It is appropriately stated in *Yarus* v. *Yarus,* 178 Cal. App.2d 190, 197 [3 Cal.Rptr. 59], as follows:

"[4] The same rules of interpretation apply in ascertaining the meaning of a judgment as in ascertaining any other writing. (*Verdier* v. *Verdier,* 121 Cal.App.2d 190, 193 [263 P.2d 57]; *Los Angeles Local Joint Executive Board* v. *Stan's Drive-Ins, Inc.,* 136 Cal.App.2d 89, 94 [288 P.2d 286].)

[5] It has been stated that: 'The rule is well settled that a consent judgment, being regarded as a contract between the parties, must be construed as any other contract.' (*In re Ferrigno,* 22 Cal.App.2d 472, 474 [71 P.2d 329]; see also *Becker* v. *Becker,* 36 Cal.2d 324, 326 [223 P.2d 479].)

[6] Thus, parol evidence is not admissible to change the legal effect of a judgment or the record of it in any ma-

terial respect. (*Kirkpatrick* v. *Harvey,* 51 Cal.App.2d 170, 173 [124 P.2d 367] ; *Citizens Nat. T. & S. Bank* v. *Hawkins,* 87 Cal.App.2d 535, 543 [193 P.2d 385].) ▇ [7] As clearly stated in *Estate of Gaines,* 15 Cal.2d 255, at page 264 [100 P.2d 1055] : 'The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission.''

▇ It is clear that the oral agreement (if there was one in this case) between the joint tenants not to terminate the joint tenancy in their lifetimes is as said in *Goldman* v. *Goldman,* 116 Cal.App.2d 227, 241 [253 P.2d 474] ''of no value'' and ''It [the agreement] is not in writing as required of contracts concerning real property. Therefore, decedent was free to make a transfer of his [her] share at his [her] pleasure.''

▇ The appellant in this case in effect proposed to prove what the lawyers for the respective parties talked about in the judge's chambers. There was no offer to establish that either or both of the lawyers at the time had any authority to enter into any contract on behalf of their respective clients with reference to the real property in question. ▇ Appellant now further contends that he was prohibited from presenting any theory of possible exceptions to the statute of frauds. The record is bare of any effort upon his part to make known to the court any thought with reference to any exceptions to the rule of the statute of frauds.

▇ It is appropriately said in *Strohm* v. *Strohm,* 182 Cal.App.2d 53, 63 [5 Cal.Rptr. 884], that in interpreting the interlocutory decree of divorce '' '[t]he same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing. [Citing case.] ▇ The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect. . . .' '' and further this court ''. . . may consider the opinion of the trial judge for the purpose of understanding and interpreting the judgment.'' Or, as stated in *Freeman* v. *Donohoe,* 188 Cal. 170, 172 [204 P. 593], ''[i]n determining the scope and effect of the judgment the entire judgment-roll may be looked to for the purpose of its interpretation.'' ▇ As a consequence of the authorities, if the interlocutory decree of divorce did contain some ambiguities with reference to restricting the alienability of the wife's or hus-

band's interest in the real property, it was proper for the court to look to the entire judgment roll in order to resolve the ambiguities in the judgment, if any.

The order for judgment set forth in the minute entry provides that upon one of several contingencies, including the death of the wife, the property was to be sold and the proceeds divided equally between the parties. The judgment prepared by the attorney for the husband and supposedly based upon the order of the court, but in fact not based thereon, does perhaps contain some ambiguities which can be resolved by referring to the terms of the order for judgment. The order on its face contemplates that alienation by either party can be made of his or her interest in the real property involved.

There can be no question but that under certain circumstances husband and wife can agree upon matters with reference to the holding of title of real property and such an agreement under some circumstances, if arrived at and proved at the time of trial, will be upheld. Here the husband did not prove any agreement as alleged in his complaint and he made no offer to prove anything except what the attorneys had discussed in the judge's chambers before the trial of the case.

The plaintiff has not sustained the burden of proof and apparently could not do so.

The testimony, evidence and the inferences to be drawn therefrom support the findings of the court and the findings support the judgment.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 24, 1963.