69 Cal.Rptr.3d 150 (2007)
157 Cal.App.4th 939
In re the MARRIAGE OF Monica GONG and Terry KWONG.
Monica Gong, Respondent,
v.
Terry Kwong, Appellant.
No. A114589.
Court of Appeal of California, First District, Division One.
December 6, 2007.
*152 Tarkington, O'Neill, Barrack & Chong, Robert A. Roth, San Francisco, Law Office of Lisa M. Dugoni, Lisa M. Dugoni, San Mateo, for Respondent.
Law Offices of Mattaniah Eytan, Mattaniah Eytan, Corte Madera, Eric Schenk, for Appellant.
*151 STEIN, Acting P.J.
As part of a marital settlement agreement terminating their 21-year marriage, Terry Kwong promised to support his children and pay for half their college expenses. After he failed to pay child support and related obligations for a number of years, his former wife, Monica Gong (now Monica Suryoutomo), obtained a charging order under which Kwong's existing and continuing obligations were paid directly to her from Kwong's partnership interest in Milpitas Green, a shopping mall. Several years later, Kwong filed a motion to stop any further payment, claiming he had fully satisfied his obligations to Gong. The superior court denied the motion. Kwong appeals.
After reviewing Kwong's arguments, and the record, we dismiss the appeal as frivolous. We award sanctions to Gong in the amount of $15,000. We also find sanctions in the amount of $6,000 should be paid to the clerk of this court to defray the costs of processing this appeal. We remand the matter to the trial court for the purposes of awarding Gong reasonable attorney fees incurred in defending the appeal and seeking sanctions.

BACKGROUND
Kwong and Gong divorced in September 1994, signing a marital settlement agreement (MSA) that was incorporated into the judgment of dissolution. As relevant here, the MSA required Kwong to pay $2,500 per month child support for the couple's two children (then 16 and 14) until the children reached the ages of 27 and 25. Kwong also agreed, and was required, to pay one-half of the children's college expenses. The MSA further provided that in the event either party was required to bring any action or proceeding to enforce any of its provisions, the prevailing party would be entitled to recover attorney fees from the other party.
Kwong almost immediately reneged on the MSA, paying only a few months' child support to Gong. He also made a single payment of $2,100 directly to the parties' older child to offset some of that child's college expenses. In November 1996, Gong filed a motion seeking, in part, to compel Kwong to pay $105,318.05 in child support arrearages and $24,896.97 for college expenses. The parties ultimately reached a settlement under which Kwong agreed to pay Gong $115,000 to satisfy his existing obligations to her. When Kwong still did not pay, Gong filed another motion in January 1999 to enforce Kwong's obligations *153 under the September 1994 judgment. Gong also asked the court to appoint a receiver and to issue a charging order against Kwong's partnership interest in Milpitas Green. The matter was heard on May 23, 2000, and June 5, 2000, by Judge Steven Dylina, who ruled Kwong owed Gong $280,214.06 for child support and $24,896 for one-half of their children's college expenses. Judge Dylina also appointed a receiver and issued a charging order against Kwong's interest in Milpitas Green. Judge Dylina ordered Kwong to pay attorney fees to Gong in the amount of $15,790.75. These rulings were set forth in an August 3, 2000 proposed statement of decision, an August 29, 2000 statement of decision, and, later in the court's order on the rulings, entered on March 1, 2001.
It appears the delay between the dates of the hearing, the date the court filed its proposed statement of decision, and the date the court filed its statement of decision, resulted from the court's request that the parties submit questions they wished to have resolved by the statement of decision, the time it took for the parties to submit those requests, and the time it took the court to consider and reject Kwong's objections to the court's proposed statement of decision. The seven-month delay between the date the statement of decision was filed and the date the order was entered was caused by a number of things. Gong had served Kwong and his attorney with a proposed order, but Kwong's attorney withdrew from the case without signing it. Kwong obtained new counsel, who objected to the proposed order. When Gong's attorney was not able to draft an order that Kwong's attorney would accept, she submitted her proposed order to Judge Dylina on January 3, 2001. Kwong's attorneys submitted their own version on January 11. Judge Dylina finally signed Gong's version, with some modifications, on February 1, 2001, and it was filed on March 1, 2001. Kwong received a statement of arrearages as of May 1, 2000, and a projected repayment schedule. Thereafter, Kwong's obligations were paid down by means of quarterly payments of $30,000, beginning June 1, 2001, from his partnership interest in Milpitas Green. Each quarter he received a statement showing the balance due, which he never disputed.
In early September 2005, Kwong, represented by Mattaniah Eytan and Eric Schenk of the Law Offices of Mattaniah Eytan, filed a motion seeking an order he had satisfied his obligation, claiming the receiver had collected $30,000 more from Kwong than he owed.[1] He also sought attorney fees from Gong, and a $100 statutory penalty for failure to file a satisfaction of judgment. Kwong's calculations were premised on the theory he had no support obligation for the period from May 2000 to March 2001, and was not responsible to Gong for any interest accruing on his existing obligation during the same time period.
Kwong's theory was based on the wording of the order and the delay between the dates of the hearing and the date on which the order finally was entered. There is no question but that Judge Dylina's ruling was based on the evidence adduced in May and June 2000, or that the order, entitled, "Order After Hearing on May 23, 2000 and June 5, 2000," determined the sums owed by Kwong to Gong as of the time of the hearing. Judge Dylina's proposed statement of decision, statement of decision, and order all recited "the current amount *154 due" for child support was $280,214.06 and Kwong's obligations for the children's college expenses "is now the sum of $24,896.00." Based on this wording, Kwong argued the court calculated the amount of his obligation as of March 1, 2001, which, if true, relieved Kwong from any support obligations for the nine-month period from May 2000 to March 2001, and also relieved him from any obligation to pay interest on his existing obligations for the same period. Kwong's position was he should be relieved from these obligations because the words "current" and "now" are unambiguous and meant the amount due as of the March 1, 2001 entry of the order, not as of the time the evidence was adduced and/or the court rendered its decision.
Judge Clifford V. Cretan, who heard Kwong's motion, rejected Kwong's theory, finding, as quite clearly is true, Judge Dylina used the word "current" to refer to the date the evidence of Kwong's obligations was admitted. Judge Cretan specifically found that the February 1, 2001 order "did not impact the 1994 child support order, which remained and continued on." He characterized his own decision as a common sense reading of the order, stating, "Otherwise, it would mean that Judge Dylina, in fact, held a hearing, reached a result, and then just called time out for eight or nine months while everybody agreed on the preparation of the final document ... that those nine months became nonexistent, basically, for both current support and interest calculations. I don't believe that could have been his intention. And certainly, in reading the statement of decision, I don't believe it was."
Kwong has appealed, again asserting the terms "current" and "now" in the March 1, 2001 order are unambiguous and the order therefore must be read to state the full extent of his obligations as of that date. Gong has filed a responsive brief. She also has filed a motion for sanctions against Kwong for filing a frivolous appeal. We notified the parties we would be considering whether sanctions should be opposed at the time we considered the merits of the appeal, inviting them to address the question of sanctions at the time set for oral argument on the merits of the appeal. (See Cal. Rules of Court, rules 8.276(e)(3) & (e)(4); In re Marriage of Flaherty (1982) 31 Cal.3d 637, 654, 183 Cal.Rptr. 508, 646 P.2d 179 (Flaherty) [finding due process requires a court imposing sanctions to provide the affected party or attorney notice, an opportunity to be heard, and a written order reciting in detail the circumstances justifying the sanction].)

DISCUSSION
California courts have the inherent power to dismiss frivolous appeals. (San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn. (2004) 125 Cal.App.4th 343, 349, 22 Cal.Rptr.3d 724; People ex rel. Lockyer v. Brar (2004) 115 Cal.App.4th 1315, 1318, 9 Cal.Rptr.3d 844.) In addition, Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 8.276(e)(1) allows the court to impose sanctions on a party or an attorney for the taking of a frivolous appeal or appealing solely to cause delay. An appeal is frivolous "only when it is prosecuted for an improper motiveto harass the respondent or delay the effect of an adverse judgmentor when it indisputably has no meritwhen any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (Flaherty, supra, 31 Cal.3d at p. 650, 183 Cal.Rptr. 508, 646 P.2d 179.) The first *155 standard is tested subjectively. The focus is on the good faith of appellant and counsel. The second is tested objectively. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2006) ¶¶ 11:102 to 11:103, p. 11-34, rev. # 1, 2006.) "While each of the above standards provides independent authority for a sanctions award, in practice the two standards usually are used together `with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay.' [Citations.]" (Id. at ¶ 11:104, p. 11-34.)
There is no question whatsoever what Judge Dylina meant when he signed an order setting forth Kwong's child support and college expenses obligations. Judge Dylina used the figures supported by Gong's evidence at the hearing on her motion, which, of course, calculated the sums owed as of May 2000.[2] The order signed on February 5, 2001, is entitled, "Order After Hearing on May 23, 2000 and June 5, 2000." There is no reasonable basis to conclude Judge Dylina's use of those figures in the order meant he had decided either that no additional sums accrued between the dates of the hearing and the date the order was filed or that the original calculations were in error.
Kwong asserts the words "current" and "now" are unambiguous and must be found to refer to the time the order was entered. As both terms refer to a state of time, they have no meaning without context. "Current," for example, could mean the moment of thought, the moment of uttering thought, the moment of reducing thought to writing or, as Kwong suggests here, the moment a writing is filed or that it is read. In addition, even a term that does not require context to have meaning, and on its own might appear to be completely lacking in ambiguity, can mean something altogether different when context is known, or in light of the circumstances under which it was uttered or written. The California Supreme Court made this point in the venerable case of Pacific Gas & E. Co. v. G.W. Thomas Drayage Etc. Co. (1968) 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, where, at pages 38-39, 69 Cal. Rptr. 561, 442 P.2d 641 it explained: "If words had absolute and constant referents, it might be possible to discover contractual intention in the words themselves and in the manner in which they were arranged. Words, however, do not have absolute and constant referents. `A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry. ...' [Citation.] The meaning of particular words or groups of words varies with the `... verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges).... A word has no meaning apart from these factors; much less does it have an objective meaning, one true meaning.' [Citation.] Accordingly, the meaning of a writing `... can be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words.'"
Statutory law, too, recognizes the importance of context and circumstances in construing the meaning of words.[3] Civil Code section 1647 provides, in connection with the interpretation of contracts, "A contract may be explained by reference to the circumstances under which it was made, and *156 the matter to which it relates." This very court, albeit some years past, applied the same principle when it struck from an order a phrase that was repugnant to the intent of the issuing court. (See Verdier v. Verdier (1953) 121 Cal.App.2d 190, 192-193, 263 P.2d 57.) The principle has been applied in a number of other California cases involving dissolution proceedings. (E.g., Cottom v. Bennett (1963) 214 Cal. App.2d 709, 716-718, 29 Cal.Rptr. 715; Strohm v. Strohm (1960) 182 Cal.App.2d 53, 63, 5 Cal.Rptr. 884; Graham v. Graham (1959) 174 Cal.App.2d 678, 686-687, 345 P.2d 316.) We find no merit whatsoever in Kwong's arguments that the meaning of the charging order must be determined exclusively by the interpretation he attaches to the words "current" and "now."
But there is another, significant, reason for rejecting Kwong's argument. Kwong's interpretation of Judge Dylina's order, if adopted, would have had the effect of modifying the 1994 child support order by wiping out, retroactively, nine months of support and interest. Although a court has the power to modify support, a court (with an exception that does not exist here) lacks jurisdiction to modify or terminate any amount accruing before a motion to modify or order to show cause was filed. (Fam.Code, § 3651, subd. (c)(1); County of Santa Clara v. Wilson (2003) 111 Cal. App.4th 1324, 1326, 4 Cal.Rptr.3d 653; In re Marriage of Perez (1995) 35 Cal.App.4th 77, 80, 41 Cal.Rptr.2d 377.) Kwong never filed a motion to modify his child support obligations and, as of March 1, 2001, his arrearage under the 1994 judgment had increased to include the sum owed between the date of the hearing in May 2000 and the filing of the order in March 2001, plus the interest on his entire arrearage, which exceeded $5,000 a month. To accept Kwong's argument we would have to conclude that Judge Dylina was unaware of Family Code section 3651, and the well-settled case law on the subject, when he issued an order exceeding his jurisdiction that deprived Kwong's children of support for no apparent reason. We find it highly unlikely Judge Dylina would be unaware of the limits on his jurisdiction. The argument of Kwong and his attorneys, therefore, appears to be nothing more than a cynical attempt to impute to the trial court an intention it did not have so that Kwong might continue to harass his former wife by delaying satisfaction of his legal obligation.
At oral argument, Kwong's counsel suggested that the enforcement order signed by Judge Dylina in 2001 was in effect a new judgment and, therefore, only the amount stated in that order could be collected by the receiver. Counsel even suggested that if Gong believes Kwong owes her more, she should bring another motion to enforce. There is only one judgment in this case, the one entered in 1994, and it obligated Kwong to make child support payments to Gong. Kwong consistently has refused to discharge the obligations imposed by that judgment unless compelled by court order. Counsel's sophistry goes beyond proper advocacy, demonstrating a willingness to assist Kwong's harassment of Gong and to abuse the court's processes.
We are aware sanctions should be "used most sparingly to deter only the most egregious conduct" (Flaherty, supra, 31 Cal.3d at p. 651, 183 Cal.Rptr. 508, 646 P.2d 179), and that an appeal lacks merit does not, alone, establish it is frivolous (Dodge, Warren & Peters Ins. Services, Inc. v. Riley (2003) 105 Cal.App.4th 1414, 1422, 130 Cal.Rptr.2d 385). This appeal, however, goes far beyond asserting an unmeritorious claim. We have no doubt Kwong and his attorneys were and are perfectly aware Judge Dylina did not mean to deprive Kwong's children of support for *157 the period in question or to deprive Gong of interest on the sum Kwong already owed to her during the same period. Additional evidence of bad faith is shown by Kwong's pursuit of every possible avenue to deny support to his children, at least if he was required to pay that support to his former wife for his children's benefit, and his failure to pay support even when ordered to do so by the court. Finally, Kwong's argument attempts to take advantage of a delay caused at least in part by Kwong and his attorneys. Simply put, we are convinced this appeal has been prosecuted in bad faith.
We conclude, therefore, this is a frivolous bad faith appeal warranting sanctions. We begin by dismissing the appeal outright. (See Ferguson v. Keays (1971) 4 Cal.3d 649, 658, 94 Cal.Rptr. 398, 484 P.2d 70.) We also find the case to be one where monetary sanctions are appropriate. Factors relevant to determining the amount of sanctions to be awarded a party responding to a frivolous appeal include "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future. [Citation.]" (Pierotti v. Torian (2000) 81 Cal.App.4th 17, 33-34, 96 Cal. Rptr.2d 553 (Pierotti).) Gong has produced evidence she has incurred approximately $30,000 in attorney fees on appeal. Although she will be paid her fees in accordance with the terms of the MSA, that sum indicates the time and trouble Gong has experienced in responding to the appeal.
The appeal is objectively frivolous. It was brought in bad faith to delay payment of Kwong's obligation[4] and to further harass Gong. The words of the court in National Secretarial Service, Inc. v. Froehlich (1989) 210 Cal.App.3d 510, 526, 258 Cal.Rptr. 506, are apt. "Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper." (And see In re Marriage of Economou (1990) 223 Cal.App.3d 97, 106, 272 Cal.Rptr. 673.) Here, the bad faith conduct is made even more objectionable as it attempts to deprive Kwong's children of a portion of their support and because, in misconstruing the trial court's order, it attempts to make the court an unwitting accomplice. Gong has asked for at least $15,000 in addition to her attorney fees. That sum is appropriate and not out of line with sanctions imposed by other appellate courts in like situations. (See Pierotti, supra, 81 Cal.App.4th at p. 34, 96 Cal.Rptr.2d 553, and cases cited there.)
We also find sanctions should be paid directly to the clerk of this court. "`"Other appellate parties, many of whom wait years for a resolution of bona fide disputes, are prejudiced by the useless diversion of this court's attention. [Citation.] In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of *158 this court's time and resources. [Citations.] Accordingly, an appropriate measure of sanctions should ... compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. [Citations.]" [Citation.]'" (Pollock v. University of Southern California (2003) 112 Cal.App.4th 1416, 1433, 6 Cal. Rptr.3d 122; accord, Pierotti supra, 81 Cal.App.4th at p. 35, 96 Cal.Rptr.2d 553 [because a frivolous appeal harms the court, not just the respondent, additional award of sanctions payable directly to the court clerk to compensate the state for the cost of processing such appeals is appropriate].)
A number of Court of Appeal decisions have adopted figures of $5,900-$6,000 as a conservative estimate of the costs of processing an average appeal, basing those figures on a calculation made in 1992. (See, e.g., Pollock v. University of Southern California, supra, 112 Cal.App.4th at p. 1434, 6 Cal.Rptr.3d 122; Pierotti supra, 81 Cal.App.4th at p. 36, 96 Cal.Rptr.2d 553; Cohen v. General Motors Corp. (1992) 2 Cal.App.4th 893, 897, 3 Cal.Rptr.2d 619.) A current cost analysis undertaken by the clerk's office for the Second Appellate District, using the same general methodology, indicates the cost of processing an appeal that results in an opinion by the court to be approximately $8,500, while the cost for processing a case that is resolved without opinion (for example, by dismissal for lack of an appealable order) to be approximately $1,750. We are dismissing the appeal here, but the nature of the case and of Kwong's arguments have caused us to effectively issue an opinion. However, we also recognize the legal issues involved are not at all complex. We conclude that sanctions of $6,000, payable to the clerk of this court, are appropriate.
Finally, the costs to this court, and the monetary and emotional costs to Gong resulting from needless and frivolous litigation, are chargeable both to Kwong and to his attorneys, who have taken a phrase or two and have fashioned from them an argument that attempts to subvert the trial court's intent in order to deny support to Kwong's children and interest on his obligations to his former wife for a nine-month period. "An attorney in a civil case is not a hired gun required to carry out every direction given by the client. [Citation.] As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so. [Citation.] Under such circumstances, the high ethical and professional standards of a member of the bar and an officer of the court require the attorney to inform the client that the attorney's professional responsibility precludes him or her from pursuing such an appeal, and to withdraw from the representation of the client." (Cosenza v. Kramer (1984) 152 Cal.App.3d 1100, 1103, 200 Cal.Rptr. 18, and see also rule 3-200(A) & (B), Rules of Professional Conduct.) We therefore impose these sanctions not only against Kwong, but against his attorneys, Mattaniah Eytan and Eric Schenk.

DISPOSITION
The appeal is dismissed. The matter is remanded to the trial court to calculate and award to Gong reasonable attorney fees incurred in responding to the appeal and in seeking sanctions, which amount shall be added to the charging lien and paid to Gong through the receivership.
As sanctions for bringing this frivolous appeal, Kwong and his attorneys, Mattaniah Eytan and Eric Schenk, are jointly and severally liable to pay $15,000 to Gong, which amount shall be added to the charging lien and paid to Gong through the *159 receivership, and $6,000 to the clerk of this court. The clerk of the court is directed to deposit the sums paid to her into the general fund. All sanctions shall be paid no later than 15 days after the remittitur is filed.
Attorneys Mattaniah Eytan and Eric Schenk and the clerk of this court are each ordered to forward a copy of this opinion to the State Bar upon return of the remittitur. (Bus. & Prof.Code, §§ 6086.7, subd. (a); 6068, subd. (o)(3); Pierotti supra, 81 Cal.App.4th at pp. 37-38, 96 Cal.Rptr.2d 553.)
Gong is awarded her appellate costs.
We concur: SWAGER and MARGULIES, JJ.
NOTES
[1] Kwong's attorneys also sent a letter to Milpitas Green's general partner, threatening suit should the general partner continue to make payments to Gong. Gong has not received any payments since March 2005.
[2] Kwong made no payments between the hearing on Gong's motion in May 2000 and the implementation of the receivership in June 2001.
[3] See Martin v. Szeto (2004) 32 Cal.4th 445, 448, 9 Cal.Rptr.3d 687, 84 P.3d 374.
[4] We do not have before us the exact sum representing the difference between that which Kwong owes and that which he claimed he owes, but it is a substantial figure, representing the support owed from May 2000 to March 2001, plus the interest on the preexisting debt that accrued during the same period, plus the interest since accruing on those sums.