**Elling E. FOX and Jessie J. Fox, Appellants,**

v.

**Larry C. SKELLENGER and Charles Brewster, Appellees.**

**No. 13801.**

United States Court of Appeals Ninth Circuit.

Oct. 7, 1954.

Juliana D. Wilson, Anchorage, Alaska, for appellant.

Wayne Booth, Seattle, Wash., Bailey E. Bell, William H. Sanders, Anchorage, Alaska, for appellee Skellenger.

Before BONE and FEE, Circuit Judges, and DRIVER, District Judge.

BONE, Circuit Judge.

This is an appeal from a decree ordering specific performance of a real estate contract upon the payment of the remainder of the full purchase price and an additional $600 and denying a cross-complaint requesting forfeiture of the contract and damages for the period from November 17, 1951 to present.

On August 2, 1949, appellee, and appellants Fox and wife, entered into a written contract in which appellee agreed to purchase a certain tract of real estate in Anchorage, Alaska then belonging to appellants. The contract provided that appellee was to pay a total purchase price of $4,250 and to make a down payment of

$1,400. This "down payment" was made by transferring to appellants the title to an automobile of the agreed value of $1,400. Under the contract, the balance, $2,850 was to be paid at the rate of at least $100 per month, plus interest at eight per cent, payments to commence September 2, 1949. The deed was placed in escrow at the First National Bank of Anchorage, Alaska, hereafter the Bank. Shortly after the execution of the contract appellants left Alaska and moved to the State of Washington.

On the record before it, the lower court was justified in concluding that the following matters and things were clearly established as facts in the case. The findings and conclusions of the court are rested on these facts.

By November, 1951, thirteen payments had been made, only one of which had been made on time, that of November 2, 1949. Payments of January, 1950, March, 1950 and June, 1950 were missed and no further payment was made after December 22, 1950, until the tender of the balance then due under the contract was made to the Bank on November 16, 1951. In November, 1951, there was $1,827.32 due on the contract, including interest. Appellee had thus paid over one-half of the total contract purchase price plus interest.

The contract contained a provision making time of the essence. There was also a provision stipulating that late acceptances of past due installment payments would not constitute a waiver. The contract provided that appellee would insure the premises against fire, but he failed to so insure and on October 2, 1949, two months after the contract had been entered into, a fire occurred destroying a part of the inside of the building on the premises. Appellee subsequently restored a major portion of the building injured by the fire.

Appellee testified that he injured his back late in December, 1950, and as a result lost his job because he could not work at all for three months and could only work a limited amount thereafter. After this injury he did not make any further payments until on November 16, 1951, he tendered to the Bank the balance then due on the contract of purchase.

Appellee failed to make the monthly payment due in January, 1950. He thereupon wrote the appellants on February 1, 1950, saying in part:

"If you desire to make any change or exercise your privilege of voiding the contract, due to non-payment of your account on time, let me know, and I will arrange to turn over things to your representative."

Appellant, Elling Fox, testified that he did not answer this letter. He also testified that he had written several letters to appellee asking him why he didn't make the payments. Appellee testified that he never received any such letters and there is no further evidence of the letters beyond the testimony of appellants that they were written. Appellants never warned appellee that they might forfeit the contract.

On August 25, 1951, appellee sold the real property under an installment contract to one Brewster for the purchase price of $4,000. Under this contract of purchase, Brewster paid to appellee $700 in installments, none of which was paid to appellants by appellee. Up to the time of trial of this action, Brewster had paid an additional sum of $2,800 into another banking institution for the benefit of appellee, and at said time owed appellee the remaining sum of $500 on the contract of purchase.

Brewster bought the property for business purposes and made substantial improvements thereon which greatly enhanced its value. Prior to November 14, 1951, he had erected a building which cost $2,500. He also put in a well and cesspool and filled in a low area on the land all of which cost him $749.75 plus his own labor. Several months after appellant had given appellee notice of termination of the contract and with knowl-

edge thereof, Brewster erected a $2,000 neon electric business sign on the building he had built.

On November 14, 1951, appellant Elling Fox arrived in Anchorage, Alaska. Without prior warning to appellee by mail and without attempting to contact appellee upon his arrival, he went to the Bank on that date and withdrew the deed he had placed in escrow.

Elling Fox and appellee talked briefly at appellee's home on the property in question on the night of November 15th, but no discussion was had of a forfeiture at that time.

On November 16, 1951, appellee went to the Bank and there tendered the full balance of $1,838 then due on the contract, plus interest, and demanded the deed. The Bank refused to accept the tendered money because appellant, Elling Fox, had withdrawn the deed on November 14, 1951. Appellee then deposited this amount in his account and advised the Bank that it could be applied on the purchase contract at any time.

On November 17, 1951, Elling Fox presented to appellee a formal written notice of termination of the contract.

On November 26, 1951, appellee commenced the instant action demanding specific performance of the contract and thereupon deposited $1850 with the Clerk of the lower court as a tender of performance, this sum to be paid to, or delivered to, appellants upon demand, as alleged in appellee's complaint.

Appellants by answer and cross-complaint averred, inter alia, the default of appellee Skellenger in failure to make the stipulated monthly payments; denied that they acquiesced in, waived, or consented to the delinquency of appellee; asserted the failure of appellee to keep the building on the property insured as required by the contract. Appellants also pleaded terms of the contract which provided for forfeiture of the right of appellee to a conveyance of the property in case of failure to make full payment for the same, or to make any of the payments when due, and for retention by the vendor of all payments made prior to default, as liquidated damages for breach of the contract. Appellants prayed for attorney's fees; for a decree declaring the contract forfeited and that all payments made by appellee be forfeited to appellants as liquidated damages in the nature of rent and not as a penalty; that appellants be awarded immediate possession of and restitution of the premises, along with damages of $7.50 per day from date of their notice of termination of the contract.

By its decree the lower court ordered appellants to deliver a deed of the property to appellee, if appellee paid $600 to appellants over and above the total amount then due on the contract, this additional sum to cover expenses incurred by appellants due to appellee's failure to make the monthly installments when due. Appellee paid the additional $600 into the court and the court thereupon ordered appellants to deliver a deed to appellee.

Appellants complain that the lower court erred in granting appellee's request for specific performance of the contract and denying the relief demanded in appellants' cross-complaint. We find ourselves unable to agree with this contention. Appellee had paid over one-half of the total purchase price plus interest, and had tendered the total amount *before* appellant Elling Fox endeavored to terminate the contract by his formal notice. As we have indicated above, Brewster had made substantial improvements on the property under his contract of purchase and his expenditures had greatly enhanced its value.[1]

It is obvious that Judge Dimond was fully convinced that it would be inequi-

---

1. The court found that neither appellee nor appellants Fox and wife ever recorded the contract between them. Brewster recorded his contract of purchase with appellee on August 28, 1951. He had no contractual relations with Fox and his wife.

table and unjust, in light of all of the facts of this case, to deny the relief sought by appellee, and we find no sound reason to disagree with his disposition of the controversy. As to Brewster, a condition set forth in the decree was that he was not entitled to any relief other than a requirement that appellee comply with the terms of his contract of sale with Brewster.

The decree of the lower court is affirmed.