[No. 40239. Department Two. November 7, 1968.]

*In the Matter of the Welfare of* JANET DUNAGAN.
KENNETH DUNAGAN *et al., Petitioners,* v. THE STATE OF
WASHINGTON, *Respondent.**

*Reported in 447 P.2d 87.

*Kenyon Eldridge Luce*, for petitioners.

*Ronald L. Hendry* and *Leslie A. Wahlstrom*, for respondent.

NEILL, J.—The Pierce County Juvenile Court has declared a child to be a dependent child, made her a temporary ward of the court, and placed her in a foster home. We granted certiorari upon the petition of the child's father and stepmother to review the order of the juvenile court.

Eight-year-old Janet Dunagan appeared in school on a Monday morning bearing bruises and marks evidencing a rather severe spanking, strapping, or other form of battery. She informed her teacher that she had been spanked by her father and stepmother about six times during the weekend. The school nurse was called who examined the child and she, in turn, called the Pierce County Office of Public Assistance. A school counselor and a social worker from the public assistance office took the child home and left her with her stepmother. The social worker thereafter contacted the juvenile detention center and requested the child be taken into custody as a dependent child. A staff member of the juvenile detention home, without further investigation, filed a petition in juvenile court alleging the child was subject to the jurisdiction of that court by reason of the child's bruised condition and because the home was unfit. A warrant for the child's arrest was issued, signed by a deputy clerk of court.

The following day the child was removed from school pursuant to the warrant and placed in the juvenile detention home where photographs were taken showing the bruises and marks on her body. The bruised area was the portion of the anatomy which normally receives the brunt of a spanking, but extended well into the small of the back, onto the thighs and around the hips.

Petitioners presented testimony relating to the child's need for discipline resulting from her lying and failure to

do her school homework. They further testified that they were then under emotional strain due to the terminal illness of the child's paternal grandfather.

Petitioners challenge the jurisdiction of the juvenile court contending (1) that the petition was improperly drawn and filed; (2) that the warrant of arrest was not lawfully issued; and (3) that an order for continued detention of the child prior to hearing was invalid.

With respect to the first contention, the parents argue that the staff member of the juvenile detention home who filed the dependency petition did not make an investigation into any of the circumstances or allegations contained in the petition either before or after it was filed, as required by RCW 13.04.060. With respect to the second contention, the parents argue that RCW 13.04.070 allows only the court to order a warrant for arrest in dependency proceedings and then only in cases where the person summoned fails without cause to appear, where the summons cannot be served, or where it is shown that a summons would be ineffectual. They point out that the warrant was issued immediately upon the filing of the dependency petition and prior to service of summons, was ordered by a deputy clerk and not by a judge, and was not based on findings by the court that service of summons could not be had or would be ineffectual. With respect to the third contention, the parents urge that the court order extending the child's confinement past the 72 hours provided for in RCW 13.04.053 was invalid because it was only used as a means to hold the child incommunicado from her parents and indicated the juvenile court's bias against them.

We do not condone the predependency hearing procedures disclosed by the record in this case and some of the alleged defects in those procedures could well have supported a writ of habeas corpus sought prior to the hearing. However, the irregularities occurring prior to the hearing did not deprive the juvenile court of jurisdiction to hold the hearing and make such decisions as were warranted by the evidence. Although a juvenile dependency hearing is

not a criminal proceeding, the rationale of *In re Ollison v. Rhay,* 68 Wn.2d 137, 412 P.2d 111 (1966), and cases cited therein, is applicable.

The parents next contend that the court erred in appointing a guardian ad litem for the child over their objections. The natural father and stepmother were present at the dependency hearing. They assert the juvenile court code does not provide for the appointment of a guardian ad litem in the circumstances of this case, and that RCW 4.08.050, which sets out the circumstances under which a guardian ad litem may be appointed in civil actions, does not apply to dependency proceedings. They also argue that the guardian ad litem did not act as the child's guardian, but as the prosecutor of the parents on behalf of the juvenile court.

In *In re Lewis,* 51 Wn.2d 193, 200, 316 P.2d 907 (1957), which involved a delinquency hearing, we said:

> We held in *State ex rel. Raddue v. Superior Court,* 106 Wash. 619, 180 Pac. 875, that the court has the duty to make such an appointment only where the child's guardian or parents are not present. However, that case is not authority for the proposition that the court has no *power* to appoint a representative for the child if the parents are present. It may often happen that the interests and desires of the parents may conflict with the interests of the child; and in such circumstances they would be in no position to adequately represent the child at the hearing. This case is an example.

In cases such as the one now before us which involve allegations of parental child abuse and an unfit home environment, the best interests and welfare of the child may well conflict with the desires of the child's parents. We therefore think it entirely proper for a juvenile court, in the sound exercise of its discretion, to appoint a guardian ad litem to represent the child at hearings held to determine what should be done with the child. The court did not abuse its discretion in appointing a guardian ad litem nor do we believe that the record supports the contention that the guardian failed to act on behalf of the child.

 In their next general assignments of error, the parents contend that the court committed errors in the admission and exclusion of evidence. After carefully reviewing the record, we are convinced that the court did not commit reversible error. However, we will briefly touch on each contention.

1. The court permitted testimony by the assistant director of the juvenile court service concerning another of petitioners' children. The objection was overruled on the grounds that the parents had initially brought up the subject on direct examination. Moreover, the testimony was relevant in that it enlightened the court as to the child's home conditions. Contention is made that the testimony was hearsay, but no such objection was made to the trial court.

2. The court excluded the testimony of the family's pastor which allegedly would have shown the hostility and bias of the caseworker toward them. The court's exclusion of this testimony was not reversible error since the court indicated that any hostility which might exist between the caseworker and the parents would not have any effect on his decision. As the court stated:

> I would surmise that the greater percentage of parents involved in matters like this don't like the caseworker very well and for that reason I don't pay any attention to it, nor do I pay too much attention to their recommendations.

3. The parents contend that the court erred in admitting the photographs of the child. They argue that RCW 13.04.130 forbids the photographing of dependent children except upon court order and that in the instant case the court did not sign such an order. RCW 13.04.130 uses the words "*consent* of the juvenile court" and not "*order* of court." The record clearly establishes that the juvenile court did approve the taking of photographs, and a written order, although desirable, is not required by the statute.

4. It is asserted that the court erred in considering the caseworker's report and recommendations which allegedly

contained many prejudicial, biased, uninvestigated and un-substantiated hearsay statements concerning this case. RCW 13.04.040 provides in part that

> The probation counselor shall make such investigations as may be required by the court. The probation counselor shall inquire into the antecedents, character, family history, environments and cause of dependency or delinquency of every alleged dependent or delinquent child brought before the juvenile court and shall make his report in writing to the judge thereof.

The report is a part of the juvenile's file which, by statute, is confidential and available only to the court, the child, the child's parents, guardian and attorney, and such other persons as the court may, by order, permit to examine it. RCW 13.04.230. The contents of this report should not be considered as evidence at a dependency hearing. *In re Ross*, 45 Wn.2d 654, 277 P.2d 335 (1954). However, it appears from the record that the court did not consider the report in making its determination:

> As far as Mrs. Smith's report is concerned, that is the report which is filed here for the institution of the action and I see no reason for removing it from the file. It's a matter of what's presented here this morning, not what's in the report anyway.

As their final assignment of error, the parents challenge the sufficiency of the evidence to support making the child a ward of the court, in declaring the child to be dependent, and in removing the child from the parents' home. Before the juvenile court has authority to act, there must be proof that the child is dependent as defined in RCW 13.04.010, which provides in part as follows:

> For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:
>
> . . . .
>
> (2) Who . . . has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or
>
> (3) Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of

his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child; . . . .

With respect to our duty in reviewing the juvenile court's determinations, the views expressed in *In re Todd v. Superior Court,* 68 Wn.2d 587, 414 P.2d 605 (1966), are appropriate.

In declaring the child to be dependent and in removing her from the home of the parents, the court gave the following explanations in its oral decision:

> I am forced with the determination one thing only and that is as of this date, March 5th, what is to the best interest of Janet Dunagan. I have been in the past extremely reluctant as the staff at Remann Hall know to take children away from their parents, but I have to view this case I think not only by what went on over the week-end of February 22nd, 23rd and 24th, but also what may very well occur in the future can arise from the same situation or a similar situation. . . . . With the experience that the parents have indicated they have with this kind of discipline and not sparing the rod, it seems to me these photographs indicate excessive use of discipline which amounts in creating a condition which makes it impossible at this time at least for this girl to remain in the home. I think the Court would be greatly remiss in its duty in protecting this child to send it back to this home at this time.

It is apparent that the court's determinations are based on its belief as to the best interests and welfare of the child; and the evidence presented at the hearing is such that we could not overturn those determinations and still be consistent with the principles set forth in *In re Todd, supra.*

The juvenile court properly made its order temporary and did not foreclose the possibility that at a future time the child could be returned to the parents' home. We assume that upon a review of this case, pursuant to proper petition, the juvenile court might well consider returning the child to her home under such terms and conditions as:

814

are then warranted. *E.g., see In re Gregoire,* 71 Wn.2d 745, 430 P.2d 983 (1967).

Judgment is affirmed.

HILL, ROSELLINI, and HAMILTON, JJ., and WIEHL, J. Pro Tem., concur.