Alta Mae JOHNSON, Appellant,

v.

Francis T. JOHNSON, Appellee.

No. 2333.

Supreme Court of Alaska.

Dec. 22, 1975.

Richard J. Ray and Eugene V. Miller, Offices of Eugene V. Miller, Fairbanks, for appellant.

Joseph W. Sheehan, guardian ad litem, Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

## OPINION

BOOCHEVER, Justice.

This appeal involves the authority of a superior court judge to modify a divorce decree. It is contended that no motion to modify the decree was properly before the judge; that the modification was made without affording Mrs. Johnson an opportunity to be heard in violation of her constitutional due process rights; and that the

court lacked jurisdiction to modify the trust provisions contained in the original decree. It is also alleged that the trial court erred in its modification of the decree by appointing a guardian ad litem and trustee, finding that a transfer of property by Mrs. Johnson was unlawful and ordering the use of unpaid back alimony to replenish the trust assets for any loss occasioned by that transfer. Due to the importance of rendering a prompt decision so that the rights of the parties and their children would not be prejudiced by additional delay, we entered an order on September 29, 1975 immediately after hearing oral argument. Our order affirmed the order of the superior court modifying the decree and indicated that this opinion would follow.

On April 27, 1967, Judge Warren W. Taylor entered a judgment and decree granting a divorce to the plaintiff Alta Mae Johnson from the defendant Francis T. Johnson. Pursuant to the decree, plaintiff Mrs. Johnson was awarded the care, custody and control of the four children of the marriage—all of whom were minors at the time of the decree. The plaintiff was also awarded $200.00 a month as alimony, $50.00 a month per minor child as child support and the real property located in Mountain View, California. The defendant was required to make the $100.00 monthly payments on the California property. In addition, it was ordered that the family homestead located at 33 Mile Rich-ardson Highway on Johnson Road, together with the house thereon, and the property at ¼ Mile Badger Road be sold, and the monies deposited in trust for the education of the minor children.

Mr. Johnson was brought before the court on a number of occasions due to his failure to comply with the terms of the decree.[1] Prior to June 1973, however, neither the plaintiff nor the defendant made any attempt to comply with that portion of the decree which called for the establishment of a trust fund for the education of the children. The real property at ¼ Mile Badger Road, the proceeds from the sale of which were to form part of the trust res, was quitclaimed on September 16, 1967 by the plaintiff to her father, Elmer H. Houger. The plaintiff contends that the transfer of the property was of no benefit to her and constituted a mere reversion to the grantor (because of her alleged inability to meet the payments) rather than a sale. Nevertheless, no accounting of this transaction was ever made to the court or to the children, nor was permission obtained from the court to transfer the property.

On June 22, 1973, the defendant filed a motion to modify the decree, requesting that each of the four children of the marriage be granted an undivided one-fourth interest in the homestead located at 33 Mile Richardson Highway and nominating himself as trustee for the one-fourth inter-

---

[1]. On February 13, 1968, the plaintiff filed an amended motion for order to show cause requiring Mr. Johnson to appear before the superior court and show cause why he should not be held in contempt for his failure to comply with any of the essential provisions of the original divorce decree including alimony and child support payments as well as the various conveyancing requirements. In response to this motion, the trial court, through Judge Taylor, ordered the clerk of the court to prepare and execute the papers necessary to effectuate the sale of the California property. Such a deed was issued on February 28, 1968. Furthermore, the defendant was enjoined from interfering with the custody of the minor children.

It appears from a memorandum prepared by the plaintiff that on May 27, 1971 and again on November 17 of the same year, citations for contempt and orders to show cause were issued by the court trustee. Twice in October 1971, the court trustee notified the defendant of his failure to comply with the alimony and child support requirements. The defendant was ordered in May 1971 to make payments of $135.00 a month of which $35.00 would be applied toward arrearages. Mr. Johnson's sole response to this order was a single $50.00 payment made in May of 1972. A similar order, issued shortly thereafter by the court trustee, to pay $150.00 a month plus a 3 percent collection fee was also apparently never complied with.

est conveyed to Collette Ann, the only child still a minor at that time.

This motion was denied on September 4, 1973 by Judge Edward Davis, who was sitting as a substitute for Judge Taylor. In denying the motion, Judge Davis requested that the file be sent back to Judge Taylor for further proceedings in accordance with the 1967 divorce decree. No subsequent motion to modify the decree was filed.

In July 1973 prior to Judge Davis' ruling, the plaintiff filed a motion to reduce the arrearages in alimony and child support payments to judgment in the amount of $16,385.20. Mr. Johnson claimed certain offsets.[2]

On March 8, 1974, Judge Taylor, without providing the parties an opportunity to brief or argue orally, issued a memorandum decision modifying the 1967 divorce decree in the following manner:

1. Joseph Sheehan was appointed trustee and guardian ad litem under the provisions of AS 09.55.210 and he was ordered to marshal the assets of the trust.

2. The trustee was to establish the present value of the loss to the trust res caused by Mrs. Johnson's "unlawful transfer" of the ¼ Mile Badger Road property.

3. The trustee was to do everything necessary to collect arrearages in both alimony and child support and to divide them equally among the four children, three of whom were no longer minors, to offset the loss

to the res occasioned by the plaintiff's aforesaid unlawful sale. Once the loss was offset, the balance of child support and alimony due, if any, would go to the plaintiff.

4. A referee was to be appointed and the homestead at 33 Mile Richardson Highway was to be partitioned pursuant to AS 09.45.260 et seq. and each child was to receive an equal share of the property.

Plaintiff moved the court to reconsider its memorandum decision and order, but after argument was heard, that motion was denied on August 26, 1974. The plaintiff appeals from that decision of Judge Taylor.[3]

## AUTHORITY TO MODIFY THE DECREE

The plaintiff Mrs. Johnson contends that the defendant's motion to modify the decree filed on June 22, 1973 and denied by Judge Davis on September 4 of that year was not properly before Judge Taylor when he issued his memorandum decision of March 8, 1974. Her argument may be summarized as follows. A proper motion to modify brought by a party to a judgment pursuant to AS 09.55.220[4] was not before the court, and, accordingly, the court lacked jurisdiction and authority to reverse Judge Davis' prior order. In any event, it would ordinarily be improper for one judge to vacate the order of another judge of coordinate jurisdiction by what was, in effect, an ex parte order. Additionally, the doctrine of res judicata ap-

---

2. The offsets included his expenses during the period immediately following the divorce when he and his wife and children continued to share the same house, his support of two of his children who resided with him periodically, certain other payments made on behalf of the children, medical benefits made available through his union health insurance and certain other substantial child support payments he allegedly made to the court trustee.

3. Francis T. Johnson, the defendant, has not participated in this appeal, but Mr. Joseph

W. Sheehan has appeared as attorney for himself as guardian ad litem and trustee.

4. AS 09.55.220 provides:
 Any time after judgment, the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, or for the appointment of trustees for the care and custody of the minor children, or for their nurture and education, or for the maintenance of either party to the action.

plies to decisions on motions where proceedings have permitted a full hearing on the merits, an appeal was available and a similar order or relief is again being sought by a party on the same state of facts in the same action, suit or proceeding. Judge Davis' order was such a final order; and since no motion for reconsideration or for leave to renew was filed and no appeal taken, the order was conclusive of the matters adjudged and binding on the parties in all subsequent proceedings.

 Assuming, without deciding, that the plaintiff's legal arguments are valid, their success turns upon whether Judge Davis' ruling on the motion must be construed as a final order or as merely an interim disposition, whether the matters before Judge Davis could be said to have been fully litigated and whether Judge Taylor's memorandum decision of March 8, 1974, in fact, reversed the September 4, 1973 decision of Judge Davis. The oral opinion in the case taken in its entirety[5] clearly demonstrates the temporary or interim nature of the order emanating from the September proceedings. After cataloguing the reasons for denying the motion to modify the decree at that time, Judge Davis elaborated:

> . . . I'm of the opinion that this file should have been dealt with a long time ago. And I'm going to request that it be sent back to Judge Taylor for further proceedings in accordance with the decree that he entered back in 1967. It appears to me that this matter has gone on far too long.
>
> Now it may very well be that the proper way to handle this matter is to divide

the property into 4 pieces and to transfer to the older children the—¾ of the property, since they apparently don't wish to go to school anymore. At least, there's nothing to indicate that they do, and the father says they don't. Whether or not a ¼ interest is sufficient to educate the younger child, I don't know; that's going to take evidence. . . . The youngest child, incidentally, has indicated by a letter here that she wants to go to school and she's going to require money to educate her. . . .
But it's perfectly apparent to me that the title to this property should remain as is until this matter is straightened out.

The denial of the motion to modify was in the context of preventing Mr. Johnson from conveying undivided interests in the land to his children and thereby cluttering the title to the homestead until it could be determined on the basis of further evidence and hearings to be conducted before Judge Taylor what measures would be most consistent with the intent of the original decree.

It is important to note that Judge Davis himself suggested that some division of the property similar to that proposed by the defendant and identical to that eventually prescribed by Judge Taylor might be the most equitable remedy, but he indicated there was a need for more evidence concerning the value of the property and the cost of education of the minor child. This statement clearly indicates that Judge Davis did not believe that the matter had been fully litigated, and thus the plaintiff's res judicata argument must necessarily fail.

---

5. All parts of an order must be read together, and the order considered as a whole. *Capetan v. Brownell*, 148 F.Supp. 519 (E.D.N.Y. 1957) ; *Bureau of Welfare v. Drapeau*, 21 Cal.App.2d 138, 68 P.2d 998 (1937) ; *Oesterreicher v. Oesterreicher*, 64 N.Y.S.2d 849 (Sup.Ct.1946).
These cases generally refer to the construction of written orders. Admittedly, Judge Davis' written order denying the motion, by itself, could be read in terms of unqualified finality. However, it has also been held

that the record should be taken into consideration in determining the intent, scope and effect of an order. *Capetan v. Brownell, supra; Cottom v. Bennett*, 214 Cal.App.2d 709, 29 Cal.Rptr. 715 (Cal.App.1963), 60 C.J.S. Motions and Orders § 64. Thus the transcript of the oral ruling should properly be considered in interpreting the scope of a written order based thereon especially where, as here, the written and oral rulings are not inconsistent or contradictory, but where the latter merely qualifies or limits the former.

Finally, Judge Davis unambiguously referred the matter to Judge Taylor for further proceedings consistent with the original 1967 decree. The motion to modify was, in fact, continued or held over, and the matter was not therefore raised sua sponte. Thus, Judge Taylor's jurisdiction and authority to consider the motion to modify arose directly from AS 09.55.220 which states:

Any time after judgment, the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, or for the appointment of trustees for the care and custody of the minor children, or for their nurture and education, or for the maintenance of either party to the action.

Judge Taylor was merely ruling on a motion brought by the defendant and referred to him by Judge Davis.

Plaintiff's contention that one judge cannot overrule a prior order by a judge of coordinate jurisdiction is inapplicable since the Taylor ruling was in response to and consistent with the Davis ruling.

## DUE PROCESS RIGHTS

Mrs. Johnson complains that the summary manner in which Judge Taylor decided the motion and ordered her alimony arrearages to be used to compensate the trust for the losses due to her transfer of the ¼ Mile Badger Road property deprived her of her vested property rights without due process of law. She was not given any notice that Judge Taylor was going to consider the motion to modify the decree at that particular time, nor was she given an opportunity to brief or argue the various points dealt with in the court's memorandum decision of March 8, 1974 in advance of that decision.

The due process clause requires "that every man shall have the protection of his day in court, and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the the general rules which govern society".[6] More specifically, due process requires notice and an opportunity to be heard prior to the deprivation of a property interest protected by the fourteenth amendment.[7]

In *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352 (Alaska 1974), we discussed the due process clause of the Alaska Constitution, art. I, sec. 7 in regard to the adequacy of notice provided by certain small claims procedures. We reiterated the elementary proposition that "deprivation of life, liberty or property by adjudication [must] be preceded by notice and opportunity for hearing appropriate to the nature of the case".[8] In other contexts, this court has emphasized the fact that providing a party notice and an opportunity for a hearing is constitutionally required before that party can be permanently deprived of valuable property rights.[9]

6. *Truax v. Carrigan,* 257 U.S. 312, 332, 42 S.Ct. 124, 129, 66 L.Ed. 254, 263 (1921). *Accord, Gilbert v. Elder,* 65 Idaho 383, 144 P.2d 194, 196 (1943).

7. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, *reh. denied,* 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Cramer v. United States,* 353 F.Supp. 406 (D.Neb.1973); *Hernandez v. European Auto Collision, Inc.,* 346 F.Supp. 313 (E.D.N.Y.1972).

8. 520 P.2d at 1356, quoting from *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865, 873 (1950), *approved Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113, 119 (1971).

9. *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.,* 524 P.2d 657 (Alaska 1974); *Etheredge v. Bradley,* 502 P.2d 146 (Alaska 1972).

In the instant case, were this an appeal directly from the memorandum decision of March 8, 1974, the due process violation would have been readily established, and the necessity of remand clear. Mrs. Johnson, however, moved the superior court to reconsider its decision on March 15, 1974. Pursuant to that motion, the plaintiff was able to file a supporting brief and a reply brief. In addition, on April 11, 1974, she appeared through her counsel before Judge Taylor and made substantially the same arguments she has made before this court on appeal. Thereafter, the "court, having fully considered the matters relevant thereto, and being fully advised in the premises", denied the motion for reconsideration.

Thus, despite the apparent constitutional prematurity of Judge Taylor's March 8 decision, this appeal does not come before us under such circumstances that one party has been completely deprived of either notice or an opportunity for a full hearing on the merits. Rather, the question confronting the court is whether the opportunity to brief and argue a motion for reconsideration of a decision suffices to satisfy constitutional due process.[10]

In the context of a condemnation case, that question has been answered in the affirmative as to the United States Constitution by the United States Supreme Court's decision in *United States v. Miller,* 317 U. S. 369, 63 S.Ct. 276, 87 L.Ed. 336, *reh. denied,* 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162 (1943). *Miller* involved the propriety of a district court's ruling awarding the government restitution of certain sums previously paid to the condemnees which were in excess of the compensation eventually awarded. The condemnees argued that rendering the judgment deprived them of due process. The court stated:

> Denial of notice and hearing is asserted. But, while it is true that the court in-

cluded the judgment of restitution in its general judgment in the condemnation proceedings without notice to the parties or hearing, the respondents made motions to set aside the judgment against them, and the court heard and acted on the motions. The respondents had full opportunity to urge any meritorious reasons why judgment of restitution should not be entered against them. We think they were entitled to no more.[11]

In accordance with both *Truax v. Carrigan, supra,* and *United States v. Miller, supra,* the plaintiff had her day in court. Under the particular facts of this case where the trial court was enforcing the terms of the prior decree, ample opportunity was afforded to brief and argue the merits and to introduce any evidence tending to disprove any of the trial judge's adverse findings.

The loss to the trust estate resulting from Mrs. Johnson's transfer of the Badger Road property had not been determined prior to the hearing afforded on the motion to reconsider. Accordingly, the amount of alimony arrearage payments, if any, to be paid to the trustee were not even known at that time, much less appropriated. Mrs. Johnson was not deprived of any property rights without first having been afforded an opportunity to be heard. We hold that the due process provisions of the United States and Alaska Constitutions were not violated.

## MODIFICATION OF THE TRUST PROVISIONS

The plaintiff argues that the remedy of partition was beyond the court's power to order since there was no action before the court brought pursuant to AS 09.45.260[12] by one or more parties holding land as tenants in common. She also

---

10. This question was not discussed by either party to this appeal.

11. 317 U.S. at 382, 63 S.Ct. at 284, 87 L.Ed. at 347 (footnote omitted).

12. AS 09.45.260 provides:
 When several persons own real property as tenants in common, in which one or more of them have an estate of inheritance or for life or years, or when real property is

argues that since the partition order modified the 1967 decree to the extent that the trust res was converted from proceeds to real estate per se, it was unlawful. Finally, the plaintiff contends that insofar as the relief of partition went beyond the nature of the relief requested by the defendant in his motion to modify, the order was improper.[13]

 We shall not labor this opinion with a discussion of all of the arguments raised to justify the court's modification of the decree. We uphold the modification under the court's inherent power to enforce its judgments.[14] This inherent power to enforce its decrees may at times justify the court to go beyond the parties' requests.[15] There is particular justification for such action by a court, when necessary to preserve the rights of children who are not represented in the proceedings.[16]

 *Goodsell v. Goodsell*, 38 Wash.2d 135, 228 P.2d 155 (1951), suggests that a court not only has inherent power to enforce its decrees, but it also has a *duty* to do so.[17] The Supreme Court of Washington in *Goodsell*, in disposing of the appellant's jurisdictional argument which was

quite similar to that raised by Mrs. Johnson in the instant case, held that a court has the power to enforce executory parts of its decree even after it has become final. It was considered inconceivable that a court in a divorce case could divide the property between the parties and yet not have the power to make the division effective. We concur in the Washington court's statement that: "A court not only has the right, but it is its duty to make its decrees effective and to prevent evasions thereof".[18]

Judge Taylor did not really modify the 1967 decree in any essential respect. He made alterations necessary to obtain a result altogether consistent with the original decree. In the intervening seven years, nothing had been done to implement the sale of the Richardson Highway property so that the proceeds could be placed in trust for the children. In addition, plaintiff had transferred title to the Badger Road property to her father without permission of the court.

 We hold that the court's appointment of a new trustee and its appointment of a guardian ad litem are modifications encompassed within the court's inherent

---

subject to a life estate with remainder over, an action may be brought by one or more of those persons or by the life tenant for a portion of it according to the respective rights of the interested persons, and for a sale of the property or a part of it if it appears that a partition cannot be had without great prejudice to the parties.

13. We note a substantial question as to plaintiff's standing to raise these objections as the property is not owned by her nor is she a beneficiary of the trust. Since the issue was not raised on this appeal, we shall not consider it.

14. *Henderson v. State Bd. of Examiners of Optometry*, 221 Ga. 536, 145 S.E.2d 559 (1965); *Fuller v. Gibbs*, 122 Mont. 177, 199 P.2d 851 (1948); *Wolfe v. Smith*, 194 Okl. 201, 148 P.2d 161 (1944). In *Koshaba v. Koshaba*, 56 Cal.App.2d 302, 132 P.2d 854 (1942), the court, quoting from *Wickersham v. Crittenden*, 93 Cal. 17, 28 P. 788, 791 (1892), observed:
"A court of equity will always find the means of enforcing its decree against a de-

linquent defendant, and its power, in this respect, is as extensive as the exigencies of the case." 132 P.2d at 860.

15. *Farmers State Bank v. Cook*, 251 Iowa 942, 103 N.W.2d 704 (1960).

16. Prior to Judge Taylor's modification of the decree, the children were not represented. We have indicated the importance of having children independently represented in divorce cases under different circumstances. *Wagstaff v. Superior Court, Family Court Division*, 535 P.2d 1220, 1227 n. 20 (Alaska 1975); *Carle v. Carle*, 503 P.2d 1050, 1053 n. 5, 1054 n. 9 (Alaska 1972); *Sheridan v. Sheridan*, 466 P.2d 821, 825 n. 16 (Alaska 1970); Civil Rule 17(b); Children's Rule 11 (a).

17. *See also City of Dallas v. Dixon*, 365 S.W. 2d 919 (Tex.1963).

18. 228 P.2d at 157. *See also City of Englewood v. Riffel*, 522 P.2d 1241 (Colo.App. 1974).

power to enforce its decrees. Since it was apparent neither party had moved to activate the trust nor to protect the interests of the children, such appointments were entirely proper. The order of partition may also be classed in this category. Since the educational purpose of the trust could no longer be attained due to the change in circumstances with regard to the three older children, and since the court evidently felt Collette's educational opportunities would not be endangered by such a division, the transfer of a portion of property outright to the three others would be one means of compensating those who had heretofore been deprived of any of the benefits of the trust established in their favor.

The decision of March 8, 1974 likewise attempted to enforce the payment of the alimony and child support payments that had accrued, insofar as it ordered the trustee to do all things necessary to collect the arrearages. A more difficult problem is presented by the portion of the order that required those sums to be paid to the children to the extent necessary to offset the loss to the trust estate from the "unlawful sale of the ¼ Mile Badger Road property". The plaintiff had been ordered by the original 1967 decree to sell that property with the monies to be deposited in trust for the education of the minor children of the parties. Instead, the plaintiff transferred title to the property to her father without first seeking permission of the court. Plaintiff contends that the transfer was made because she was unable to meet payments on the property due her father under a purchase agreement. Our

decisions have indicated an abhorrence of forfeitures in land purchase agreements,[19] and the court, presented with the opportunity, might well have entered an order preventing any such forfeiture here. Moreover, plaintiff has set forth no reason why she did not attempt to sell the property for a sum more than sufficient to pay the balance due on the purchase agreement or attempt to sell her equity in the property. In requiring that the trust be reimbursed for any loss caused by plaintiff's improper action, the court was doing no more than providing a procedure for enforcement of its original decree. It will be necessary for the trial court to determine what loss, if any, was caused by the improper transfer—that is the amount if any by which the net fair market value[20] of the property at the time of the transfer exceeded the balance due on the purchase agreement. The amount would bear interest from the date of the transfer. It is only to this extent that the amounts otherwise due plaintiff are to be utilized for reimbursement to the trust res.[21]

We hold that Judge Taylor did not err in providing for partition of the property and for reimbursement to the trust res for losses incurred by reason of the sale of the Badger Road property.

## THE APPOINTMENT OF THE GUARDIAN AD LITEM AND TRUSTEE

In objecting to the appointment of the guardian ad litem, plaintiff mistakenly refers to the statutory requirements for appointment of a general guardian.[22]

---

19. *Moran v. Holman*, 501 P.2d 769 (Alaska 1972) ; McCormick v. Grove, 495 P.2d 1268 (Alaska 1972) ; *Jameson v. Wurts*, 396 P.2d 68 (Alaska 1964) ; *Williams v. DeLay*, 395 P.2d 839 (Alaska 1964) ; *Land Development, Inc. v. Padgett*, 369 P.2d 888 (Alaska 1962) ; *Fox v. Skellenger*, 216 F.2d 534, 15 Alaska 215 (9th Cir. 1954).

20. Such value should take into consideration the reasonable costs of sale.

21. Cases disapproving the allowance of a setoff in favor of the husband against amounts awarded for alimony and child support [*Ryan*

*v. Ryan*, 271 Ala. 243, 123 So.2d 102 (1960) ; *Keck v. Keck*, 219 Cal. 316, 26 P.2d 300 (1933) ; *Zaragoza v. Zaragoza*, 48 Cal.App. 2d 27, 119 P.2d 162 (1941) ; *Attaway v. Attaway*, 193 Ga. 51, 17 S.E.2d 72 (1941)] are inapplicable. Here there is no setoff between husband and wife, but a provision for reimbursement by the wife to the trust. Moreover, the doctrine against setoffs applies to debts which arose during the marriage prior to a permanent alimony decree.

22. Black's Law Dictionary, Guardian at 834 (4th ed. 1951) ; 39 C.J.S. Guardian and Ward § 3.

A general guardian is one entrusted with the general care and supervision of either the person or the estate of his ward or both.[23] A guardian ad litem is a guardian of special or limited powers appointed by a court to prosecute or defend for an infant in any suit to which he may be a party.[24] As such, the latter is merely an officer or representative of the court,[25] and, unlike the general guardian, usually has no right to interfere with the infant's person or property.[26]

■ A separate procedure for appointing a guardian ad litem is specifically set forth in Alaska Rule of Civil Procedure 17(b) which states in part:

> The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

The determination of the need for a guardian ad litem is left within the sound discretion of the trial judge,[27] and it is frequently the case that a guardian ad litem will be appointed even though parental custody rights have not been suspended.[28] In the instant case, given the long-term neglect of the interests of the children of the marriage and the mother's continued opposition to those interests, there is every reason to believe that the lower court's discretion has been wisely exercised.

The only valid aspect left to the appellant's argument is that it would still be improper for a court to appoint a guardian ad litem for a competent adult.[29] However, as the guardian ad litem points out, such an argument is rendered frivolous if the relevant paragraph of the order is reasonably construed to mean that a guardian ad litem was appointed to represent only the remaining minor and not the three adult children of the marriage.

■ The plaintiff also complains that the court was without authority or jurisdiction to appoint a trustee for the three children of the marriage who were no longer minors. The appellant relies on AS 09.55.210(5) which provides:

> In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
>
> (5) for the appointment of one or more trustees to collect, receive, expend, manage, or invest, in the manner the court directs, any sum of money adjudged for the maintenance of the wife or the nurture and education of *minor* children committed to his care and custody; . . . (emphasis added)

At the time the original decree was entered, all of the children were minors, and the court had ample authority to appoint the trustee. As has been indicated previously, we uphold the court's power to appoint the trustee for the purpose of enforcing its original decree. Moreover, the trustee functions merely as a collection agent or receiver for the adult children. No long term trustee-beneficiary relationship is contemplated. Finally, the presence of only one minor child might be said in certain cases to be enough to justify the

---

23. *Id.;* 43 C.J.S. Infants §§ 107–08.

24. *Hoffman v. Morgan,* 206 Okl. 567, 245 P. 2d 67 (1952) ; *Serway v. Galentine,* 75 Cal. App.2d 86, 170 P.2d 32 (1946).

25. *Stone v. Yellow Cab Co. of Calif.,* 221 P. 2d 131 (Cal.App.1950) (guardian ad litem who was also *mother* of infant was merely officer of court in the proceeding).

26. *Morris v. Standard Oil Co.,* 192 Cal. 343, 219 P. 998, 1000 (1923).

27. *Carle v. Carle,* 503 P.2d 1050, 1053 n. 5 (Alaska 1972) ; *Sheridan v. Sheridan,* 466 P.

2d 821, 825 n. 16 (Alaska 1970) ; *In re Dunagan,* 74 Wash.2d 807, 447 P.2d 87 (1968) ; *In re Adoption of Watson,* 45 Haw. 69, 361 P.2d 1054 (1961) ; *In re Lewis,* 51 Wash.2d 193, 316 P.2d 907 (1957).

28. *Carle v. Carle, supra* (in contested custody case) ; *R. L. R. v. State,* 487 P.2d 27, 34–35 (Alaska 1971) (in delinquency proceedings) ; *In re Lewis, supra* (in delinquency proceeding).

29. Alaska Rule of Civil Procedure 17(b).

appointment of a trustee for all the children, e. g. where the res is not to be distributed until the youngest child reaches majority or where allowing unencumbered legal title to remain in the trustee's hands may simplify and expedite real estate conveyances.

■ In one regard, however, we believe that the order of March 8, 1974 must be modified. The costs of partition of the Richardson Highway homestead were ordered to be borne equally by the plaintiff and the defendant. The Richardson Highway property was owned by the defendant alone so that essentially it was due to his recalcitrance that it became necessary for the court to order its partition. Moreover, had the defendant sold the property as originally required by the court, the costs of sale would have had to have been borne out of the proceeds from such sale. We thus conclude that the order of March 8, 1974 and our order of September 29, 1975 affirming it should be amended so as to provide that the costs of the partition be paid pro rata by those receiving the property.

As so modified, the order of March 8, 1974 is affirmed.

Affirmed.