Stephen R. CARVALHO, Appellant,

v.

Denise D. CARVALHO, Appellee.

No. S–4029.

Supreme Court of Alaska.

Sept. 4, 1992.

Allison E. Mendel, Mendel & Huntington, Anchorage, for appellant.

Charlene A. Lichtmann, Law Offices of Charlene Lichtmann, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

I. FACTS & PROCEEDINGS

Stephen and Denise Carvalho were divorced in 1981. Pursuant to their divorce settlement, Denise received sole custody of the parties' two children, and Stephen was ordered to pay $600.00 a month in child support. On February 22, 1990, Denise initiated this action seeking $36,789.00 in child support arrears. Her motion for arrears was supported by affidavits and exhibits.

On March 15, 1990, Stephen filed a request for hearing and an opposition to Denise's motion. The opposition contested the total amount Stephen owed as well as the amount he had previously paid. An affida-

vit from Stephen's present wife, Jessica Carvalho, supported the opposition, but Stephen did not file an affidavit himself. Stephen requested a hearing "so that the contested factual matters may be resolved by a Judge." Judge Madsen granted the request for a hearing.[1]

A hearing was set for April 17, 1990, in Kodiak. On April 16, Denise filed a reply to Stephen's opposition[2] and a motion to participate in the hearing telephonically pursuant to Alaska Civil Rule 99. Judge Madsen granted her Rule 99 motion on the day of the hearing. Stephen did not file a motion to participate telephonically but did submit, on the day of the hearing, a child support guidelines affidavit with attachments. Denise and Stephen both lived outside Alaska during this period.

At the hearing, only Judge Madsen was physically present in the courtroom; all the other participants were on the telephone. The telephone participants included Denise, Ms. Lichtmann (Denise's attorney), and Ms. Mendel (Stephen's attorney). Stephen was not listening on the telephone but was apparently available and willing to testify at the hearing.

The hearing consisted entirely of the attorneys' oral argument. The attorneys referred the judge to the affidavits and memoranda which they had previously submitted to the court. After both attorneys had stated their positions, Ms. Mendel attempted to present evidence as to the disputed child support issues. The following exchange occurred:

Ms. Mendel: Your honor, may I address the evidentiary issue?

The Court: I think you've had your opportunity, Ms. Mendel.

Ms. Mendel: Well, I just want the Court to be aware that my client, although he's not on the phone now, he's available to testify now.

The Court: Well, you should have made arrangements before now to put on any testimony, or submit anything further. It's a little bit late in the....

Ms. Mendel: Well, my understanding with Ms. Lichtmann was that we were doing this hearing telephonically, and he is available by telephone to testify.

Ms. Lichtmann: Your Honor, I have been told in many conversations that Mr. Carvalho is not available. There was an extension granted already in this case because Mr. Carvalho was out in the Bush somewhere.

It seems that he's available when they need him, but not when we need him to have him testify. They've had weeks to get ready for this hearing, and it's too late for them to present his testimony now.

The Court: Well, it was my understanding that this was on for oral arguments, not for a hearing.

Ms. Mendel: Your Honor, it was my understanding the reason that we put off this hearing was because we were having an evidentiary hearing on the merits. And, furthermore, it's incorrect that there's nothing in the record; there is an Affidavit from Mrs. Carvalho [i.e., Jessica Carvalho] who, you know, was equally in control of a financial situation. It's not an incompetent Affidavit, and he has submitted his child support guidelines

---

**1.** A proceeding to collect past due child support is governed by AS 25.27.226 (1991), formerly AS 47.23.226. The statute provides that if a custodial parent has filed a motion for arrears with a supporting affidavit and together with "notice of the obligor's right to respond," the obligor must respond:

> no later than 15 days after service by filing an affidavit with the court. If the obligor's affidavit states that the obligor has paid any of the amounts claimed to be delinquent, describes in detail the method of payment or offers any other defense to the petition, then the obligor is entitled to a hearing. After the hearing, if any, the court shall enter a judg-

ment for the amount of money owed. If the obligor does not file an affidavit under this section, the court shall enter a default judgment against the obligor.

*Id.; see also* AS 25.27.225 (providing that periodic support payments become vested judgments "when each payment becomes due and unpaid").

**2.** Denise's reply claimed that Stephen's opposition was deficient under AS 25.27.226 because he did not file an affidavit himself, relying instead on his wife's affidavit. Denise requested that the trial court enter a default judgment.

Affidavit. It's not at all true that the file is devoid of any opposition. He's available to testify.

We were under the understanding that this was an evidentiary hearing. If that's not the Court's understanding that's fine, but that's what we're prepared to do.

Judge Madsen never responded to Ms. Mendel's offers to present evidence. Without indicating the facts upon which he based his decision, Judge Madsen orally entered a judgment for $41,220.00 in child support arrears and indicated that he would sign an income withholding order. In May 1990, Denise submitted to the court a prejudgment computation sheet which listed $41,220.00 in child support arrears as of the date of the hearing plus $14,883.65 accrued interest (from July 1, 1982, to April 30, 1990) for a total judgment of $56,-103.65.

On May 18, 1990, Judge Madsen signed without comment Denise's proposed "Judgment for Child Support Arrears and Order to Withhold and Deliver Property."[3] Stephen appealed the judgment and sought a stay of execution. The record does not reveal whether the trial court granted the stay. However, Stephen maintains on appeal that funds to satisfy the judgment have already been deducted from his paycheck and sent to Denise.

## II. DISCUSSION

Stephen argues that he was deprived of a substantial property interest without being allowed to participate in the hearing or defend himself.[4] He claims that

his counsel did not specifically object to the lack of opportunity to call or cross-examine Denise because the trial court had already ruled that the hearing was limited to oral argument. Finally, Stephen argues that he had no opportunity to defend himself at a later execution of judgment proceeding because the income withholding order was such that money to satisfy the judgment was deducted directly from his paycheck.[5]

Stephen cites two cases, *Johnson v. Johnson*, 544 P.2d 65 (Alaska 1975), and *Ryfeul v. Ryfeul*, 650 P.2d 369 (Alaska 1982), in support of his due process argument. In *Johnson*, a trial judge summarily modified a divorce decree without allowing the parties an opportunity to brief the issues or conduct oral argument. *Johnson* 544 P.2d at 68. Prior to the trial court's decision, Ms. Johnson had moved to reduce alimony and child support arrears to judgment. *Id.* The trial court appointed a trustee and ordered, *inter alia*, that the trustee "was to do everything necessary to collect arrearages in both alimony and child support" and use the arrearages to offset losses to a trust which had been established for the education of the parties' children. *Id.* Ms. Johnson was unhappy with certain aspects of the modified decree and moved the trial court to reconsider its decision. After full briefing and oral argument, the trial court denied her motion. *Id.* Ms. Johnson appealed claiming that the trial judge's summary manner in initially modifying the decree and ordering arrearages to be used to compensate the trust deprived her of a property interest

3. The judgment lists the principal sum as $41,-221.00. The dollar discrepancy between the oral and written judgments appears to be a typographical error.

4. The determination whether a state action or procedure violates the due process protections of the state and federal constitutions is a question of law, and we review the matter using our independent judgment. *See Property Owners Ass'n of the Highland Subdivision v. City of Ketchikan*, 781 P.2d 567, 571 (Alaska 1989).

5. In addition, Stephen raises two arguments in his brief that he did not argue below or include in his points on appeal. First, he argues that

service of process was defective under AS 25.-27.226 because Denise did not inform him of his right to respond to the motion. Second, he argues that the income withholding order which allowed for an employer deduction of 55% of Stephen's disposable income and a direct payment to Denise violated AS 25.27.062 and 25.27.-250. We need not address these issues here because Stephen has failed to preserve them for appeal. *See* Alaska R.App.P. 210 (appellate court will only consider issues and arguments included in points on appeal); *see also Wetzler v. Wetzler*, 570 P.2d 741, 742 n. 2 (Alaska 1977) (supreme court will not consider issues that are argued in brief but not set forth in points on appeal).

without due process of law. *Johnson,* 544 P.2d at 70.

We explained that procedural due process under the state constitution requires "notice and opportunity for hearing appropriate to the nature of the case." *Id.* (quoting *Aguchak v. Montgomery Ward Co.,* 520 P.2d 1352, 1356 (Alaska 1974)). We further noted that the due process clause of the federal constitution requires that every person

> 'shall have the protection of [a] day in court, and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after a trial....' More specifically, due process requires notice and an opportunity to be heard prior to the deprivation of a property interest protected by the fourteenth amendment.

*Johnson,* 544 P.2d at 70 (quoting *Truax v. Carrigan,* 257 U.S. 312, 332, 42 S.Ct. 124, 129, 66 L.Ed. 254 (1921)) (footnote omitted). We went on to state that had Ms. Johnson appealed the trial court's decision directly "the due process violation would have been readily established, and the necessity of remand clear." *Johnson,* 544 P.2d at 71. However, we noted that Ms. Johnson had moved for reconsideration and had an opportunity to brief the issues and orally argue "substantially the same arguments she has made before this court on appeal." *Id.* Therefore we concluded that Ms. Johnson was afforded

> her day in court. Under the particular facts of this case where the trial court was enforcing the terms of the prior decree, ample opportunity was afforded to brief and argue the merits and *to introduce any evidence tending to disprove any of the trial judge's adverse findings.*

*Id.* (emphasis added).[6]

In *Ryfeul,* we concluded that a custody modification proceeding held in a father's absence was a violation of the father's due process rights where the trial court knew that the father had attempted to attend the hearing but was arrested on an outstanding bench warrant when he entered the courthouse. *Ryfeul,* 650 P.2d at 372. We emphasized the "relative ease with which his presence could have been secured, and the importance of the questions at issue in the modification hearing." *Id.* Stephen argues that he was similarly denied an opportunity to participate in the hearing because the trial court refused to admit his telephonic testimony.

■ *Ryfeul* may be distinguished from the present case because Stephen did not attempt to physically attend the hearing nor did he file a motion to telephonically participate prior to the hearing as required by Civil Rule 99. *Cf. Ryfeul,* 650 P.2d at 374 (where the husband's "failure to attend the modification hearing was not negligent or intentional but was caused by factors beyond his immediate control"). However, given that Stephen was apparently available to testify by telephone and the desirability of allowing him a meaningful opportunity to present his defenses, we conclude that the trial court abused its discretion by refusing to allow him to testify.[7] In *Ryfeul* we stated that "*absent compelling circumstances to the contrary,* a party to a proceeding like the hearing in this case has the right to be present, regardless of

---

6. In this case, Stephen has appealed Judge Madsen's decision directly. Furthermore, Judge Madsen did not provide the factual findings upon which he based his decision. Even if it is assumed that the judge implicitly found Denise's affidavits and supporting documents entirely credible and Stephen's affidavits incredible, Stephen was denied an opportunity to introduce evidence, other than pre-hearing affidavits, which tended to disprove any of the trial court's adverse findings.

7. Alaska Civil Rule 94 provides:

> These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

*See, e.g., Gregg v. Gregg,* 776 P.2d 1041, 1042 (Alaska 1989) (where trial court relaxed the technical requirements of Rule 99). We have held that a trial court may abuse its discretion by failing to relax procedural rules in circumstances where a strict adherence to the rule does not advance the rule's objective and results in a denial of substantial justice. *See Palzer v. Serv–U Meat Co.,* 419 P.2d 201, 206 (Alaska 1966).

whether he is in a position to affect the outcome of the proceeding." *Ryfeul,* 650 P.2d at 374 (emphasis added).

 It is perhaps not surprising that Judge Madsen assumed that the hearing was only open for oral argument.[8] Stephen acquiesced to a telephonic hearing in which neither party was physically present in the courtroom; such a proceeding does not lend itself to the give and take of evidence. Also, Stephen's attorney could and should have been more forceful in directing the court's attention to its order granting Stephen's request for an evidentiary hearing. *See In re C.L.T.,* 597 P.2d 518, 522 (Alaska 1979) ("By consenting to certain procedures or by failing to object to others, a party may waive those rights which are arguably encompassed within due process guarantees."). Finally, we recognize that in a proceeding to collect past due child support some procedural safeguards are reasonably eased to ensure that the child's welfare is protected. *Id.* at 523 (quoting *Otton v. Zaborac,* 525 P.2d 537, 539 (Alaska 1974)) ("Due process is flexible, and the concept should be applied in a manner which is appropriate [to] the nature of the proceeding.").

■ However, even taking these factors into account, we must conclude that the trial court's refusal to admit Stephen's testimony or take other evidence at the hearing deprived Stephen of a meaningful opportunity to be heard. *See Johnson,* 544 P.2d at 70; *see also Malone v. Malone,* 591 P.2d 296, 298 (Okla.1979) ("Due process requires an orderly proceeding adapted to the case in which the parties have an opportunity to be heard, and to defend, enforce and protect their rights."); *In re Moseley,* 34 Wash.App. 179, 660 P.2d 315, 318 (1983) ("Notice, open testimony, time to prepare and respond to charges, and a meaningful hearing before a competent tribunal in an orderly proceeding are all elements of civil due process.").

This case clearly involved contested facts. Stephen's only opportunity to present live testimony or to cross-examine Denise came at the hearing. *See Malone,* 591 P.2d at 298 ("Where important decisions turn on questions of fact, due process requires an opportunity, in almost every situation, to confront and cross-examine adverse witnesses."). Based on these considerations, we vacate the judgment and remand the case for further proceedings. The trial court should also enter findings of fact supporting its final judgment. *See* Alaska R.Civ.P. 52(a).

REVERSED and REMANDED.

---

**8.** Although Judge Madsen assumed the hearing was limited to oral argument, his order did not inform Stephen of this limitation. In fact, given Stephen's request for a hearing so that "contested factual matters may be resolved by a Judge," Judge Madsen's order must be construed as granting an evidentiary hearing.

Denise argues on appeal that Stephen was not entitled to an evidentiary hearing because he failed to file his own affidavit in response to her motion for arrears. We need not address this argument because any defect in Stephen's opposition was cured by Judge Madsen's order granting the hearing and Denise's failure to object or file a cross-appeal. *See In re C.L.T.,* 597 P.2d 518, 522 (Alaska 1979).